JOSEPH T. McCLINTOCK, Respondent, v. DAVID BRYDEN and others, Appellants.

A person who settles for agricultural purposes upon any of the mining lands of this State, settles upon such lands subject to the rights of miners, who may proceed in good faith to extract any valuable metals there may be found in the lands so occupied by the settler, in the most practicable manner in which they can be extracted, and with the least injury to the occupying claimant.

APPEAL from the District Court of the Tenth Judicial District, Nevada County.

The facts are distinctly stated in the opinion of the Court.

*Dibble & Thayer* for Appellants.

No brief on file.

*Conn & Tweed* for Respondent.

The Legislature has no power to pass laws interfering with or making primary disposition of the public lands in this State. See Sec. 3, Act of Congress, 1850, admitting California as a State, &c.

If the Act of 1852, Compiled Laws, pages 896–8, is constitutional, and governing in respect to mineral laws, this case is not subject to its provisions, on account of prior location of the premises in controversy in 1850.

Compiled Laws of California, pp. 537–539, §§ 111, 112, and 118, and p. 538, § 115. Crenshaw v. State River Company, 6 Randolph, 245. Jerome v. Ross, 7 Johns., 315. Stevens v. Buckman, 1 Johns., 318. 1 Page, 97. Mitchell v. Dow, 6 Vesey, 89. Eldridge v. Hill and Murray, 1 Johns., 11. Livingston v. Livingston, 6 Johns., 497. 2 Story's Eq., fifth edition, secs. 912–920, and 928–930, and 959. 4 Johns., 69. Sunol v. Hepburn, 1 Cal., 254. Blackstone's Com., book 2, chap. 1. As to possession and occupancy, Kent's Com., Maxwell v. Ward. 11 Price, 17. Robertson v. Anderson, 2 Johns., 204. 1 Hopkins' Chancery, 342. 1 Munf., 373, 395. 26 Wend., 132. 1 Dev. Eq , 349. 3 Sumner, 70. 4 How. Sup. C., 185. 2 Dall., 406–8.

BRYAN, J., delivered the opinion of the Court. HEYDENFELDT, J., concurred.

13

This cause comes up upon an appeal from an order granting an injunction, and it will not be necessary to notice many of the points made by counsel in their briefs and arguments upon the hearing of the cause.

McClintock, the plaintiff below, claims that he has settled upon, and now occupies in good faith, a tract of land in the county of Nevada for grazing and agricultural purposes. That he had made large and valuable improvements upon the same, and that he had quietly and peaceably enjoyed his possession, for some years prior to the entry of defendants, in the business of farming and grazing. The defendants below set forth in their answer, that the land so claimed by McClintock is mineral land, and that whilst engaged in the business of extracting gold from the earth, they advanced their works to the enclosure of McClintock the plaintiff, and that the earth contained within the enclosure of the plaintiff was valuable for gold mining purposes.

The record discloses, that upon affidavits setting up these facts, amongst others, the County Judge of Nevada County dissolved the injunction granted by the District Judge, and that the dissolution of the same was followed by a renewed order of injunction from the District Judge. It is further shown, that the District Judge refused to set aside the writ of injunction upon application made to him for that purpose. The appeal having been taken from the order granting the injunction, we deem it only necessary to notice the main issue raised by the bill, answer, and affidavits in the record.

The important question is now presented to us, as to what rights a person may acquire, if any, in the gold bearing districts of this State, by virtue of his prior possession, by means of enclosures and improvements for farming and grazing purposes. It has been the admitted policy of the different governments of the world for many ages, when those governments have had jurisdiction over soil containing valuable minerals, to reserve those lands for the use of the Government, and exclude them as far as possible from any claim of private ownership. Many reasons have been given for this policy, prevailing from the earliest times. One, that the Government having alone the right of coinage, it was incident to that right, that it should control the metals to be coined; others have thought that the doctrine became general in the days of the feudal ages, when nations were almost constantly in a state of war, and the revenues of kings were much straitened by the

frequent and heavy charges of expensive armaments, and that the necessities of revenue and currency excluded the idea that any subject of the crown should, by virtue of his ownership of lands, have it in his power to prevent the extraction from the soil of the wealth so much needed.

But, whatever may have been the origin of this doctrine, it is not uncertain that it has been acted upon down to our own times.

The Government of this State being a government of the people, has, as far as its action has been determined, modified this claim to the precious metals; and deriving its revenue from other sources, has, by its uniform policy, permitted its citizens, as well as the citizens and subjects of other States, to use the public lands for the purpose of extracting the most valuable metals from their soil.

The General Government has, by Acts of Congress, reserved from settlement under her laws regulating the occupation of the public lands, all lands upon which mines may exist.

The Government of the United States will issue no patent to a pre-emption claimant upon mineral lands, who claims the same for agricultural purposes. The plaintiff below has then acquired no right to his settlement from the General Government. The State of California having an undoubted right to pass laws regulating the manner of defending and possessing the public lands within her borders, by virtue of her police powers, if she has no higher right, has proceeded to define what lands may be possessed for agricultural purposes, in the Act of April 11, 1850, and the Act of April 20, 1852, (see Compiled Laws, 896,) and by the provisions of those laws, she expressly excepts from their operation, and refuses to protect, any location upon lands containing any of the precious metals. The Act of April 13, 1850, passed "for the better regulation of the Mines and the government of Foreign Miners," seems to give, by necessary implication, whatever right the State might have in the mineral in the soil, and the right to mine, to all native born or naturalized citizens of the United States who may wish to toil in the gold placers.

The Act of 1851, regulating Proceedings in Civil Cases, section 621, defining, " that in actions respecting mining claims, proof shall be admitted of the customs, usages, or regulations established or in force at

the bar or diggings embracing such claim," would seem to imply a per-mission, upon the part of the State, to the miner to seek wherever he chose in the gold bearing districts for the precious metals, and would seem to extend to him whatever right she might have to the mineral when found.

But the inquiry would naturally arise here, as to what right the plaintiff can have in maintaining possession of the farm he claims, sit-uate upon mining lands, to the exclusion of the miner, whilst he is in good faith searching for gold. The policy of both the General and State Governments has been to reserve these lands from settlement for agricultural purposes. All of the legislation of both Governments, bearing upon this question, denies the claim of the settler for agricul-tural purposes upon mineral lands: and instead of denying to the miner the privilege of extracting gold wherever found, the one, by its tacit permission, and the other, by the uniform tendency and implication of its laws, has given him that privilege, and allowed him to define and regulate his location in the mines, by the local customs and laws pre-vailing at the place where he is following his mining avocation.

It has been contended in this cause, that the location of the plaintiff for agricultural purposes upon the lands in dispute, had taken place prior to any legislation upon the subject of mining lands, and that, therefore, those laws passed with reference to the business of mining, can have no effect in denying his right to his possession, because they would be retro-active in their operation. I cannot perceive the force of this objection. The plaintiff never had, from the time of his location, any right, derived from either Government, to the possession of mineral lands enclosed by him, to the exclusion of miners who were in good faith proceeding to extract the gold from the earth.

The plaintiff is in possession without showing a right of property, and relies upon his mere possession, by buildings and enclosures, for his right to recover in this action. A bare prior possession of agricultural lands, which were public lands, has been held sufficient in some of the new States and Territories of the Union, to sustain ejectment as against a person invading that possession.

The wants and interests of a country have always had their due weight upon Courts in applying principles of law, which should shape

its conditions; and rules must be relaxed, the enforcement of which would be entirely unsuited to the interests of the people they are to govern. In the new agricultural States, it was the policy of the Government, as well as of the people, that the waste lands should be early settled, cleared, and brought into a state fit for cultivation.

The actual settler upon these lands, over much of the territory of the Union, was allowed the right of pre-emption, and the Government recognised in him, by virtue of his settlement, a species of property in the public lands. It was necessary for the encouragement of actual settlers, that without legal title to their property, and without actual enclosures, they should be able to remove any person entering upon lands claimed by them. But how is it with the case before us ? The plaintiff settles upon and claims mineral lands for purposes of agriculture, to the exclusion of miners, against the policy of both the General and State Governments, without right, and claims protection in his possession merely because he was first upon the ground; that he had fenced in a farm, and was occupied in the business of raising crops. The maxim of the law, " *qui prior est in tempore, potior est in jure,*" cannot be applied in protection of a person who settles upon lands reserved from settlement by the policy of the law, as against one entering for a purpose encouraged wherever minerals may be found.

To sustain the action of ejectment in favor of a party relying upon mere prior possession, the defendant in the action is treated as an intruder and wrong doer, who invades without right in the premises. The defendants below were in the exercise of a peaceable and lawful calling, and in their search for gold, in the progress of their works, they discovered that the plaintiff had enclosed ground in a mining district, which they believed to be valuable for gold mining purposes, and upon which they entered for the purpose of carrying on their business of extracting gold. This was not (in a mining district) the act of intruders or wrong doers, but the act of persons following a lawful and honorable pursuit, upon ground reserved to such purposes by both the policy and laws of this State.

If the doctrine were otherwise, it is plain to perceive, that persons without any right but that of possession, could, under the pretence of agriculture, invade the mineral districts of the State, and swallow up

the entire mineral wealth by settlements upon one hundred and sixty acre tracts of land. It would be using the law to a very bad purpose if we should allow a person who has no evidence of title but his improvements, and no right but that of the naked possession he has usurped, to destroy, for his own benefit, the business of a neighborhood, and put as well the Government, as the mining public, at defiance.

I, therefore, hold, that a person who has settled for agricultural purposes upon any of the mining lands of this State, has settled upon such lands subject to the rights of miners, who may proceed in good faith to extract any valuable metals there may be found in the lands so occupied by the settler, in the most practicable manner in which they can be extracted, and with the least injury to the occupying claimant, according to the express statutes of this State.

The order granting the injunction in the Court below is, therefore, reversed, with costs.