LUCY A. WARE *vs.* DANIEL ALLEN.

Essex.   Nov. 4, 1885. — Jan. 9, 1886.   FIELD & DEVENS, JJ., absent.

In an action for obstructing a watercourse by a dam, and thereby preventing the flow of water to the plaintiff's pond, there was evidence, in behalf of the defendant, that, in making a pond on his own land, he tapped some springs of water, and that more water at all times ran down to the plaintiff's pond, through the watercourse, after the construction of the defendant's pond than before, by reason of the raising of the defendant's draw-gate from time to time, the overflow from the pond, and leakage. *Held*, that the defendant was not entitled to a ruling, that, if because of the defendant's opening up new sources of supply to his pond, the overflow or amount that ran down to the plaintiff's pond was equal to or larger than before, the plaintiff could not recover.

TORT for the obstruction of a watercourse, and thereby preventing water from flowing to the plaintiff's pond.

Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff introduced evidence tending to show that the defendant built an artificial pond in a meadow above the plaintiff's pond, which meadow was the basin of a considerable watershed of surface water from the hills about it; that the defendant, by the erection of a dam, and the building and use of a draw-gate, obstructed and detained the water which was accustomed to flow down to the plaintiff's pond through an ancient and well-defined watercourse from the meadow.

The defendant introduced evidence tending to show, that, in excavating his pond, he unearthed two or three springs, and tapped a spring in land adjoining his own, and conducted the water flowing therefrom to his own pond; and that the last-named spring supplied his pond with water to a very large extent.

There was also evidence introduced in behalf of the defendant tending to show that, because of the additional supply of water from said springs, and the greater volume of water in his pond produced thereby, more water at all times ran down to the plaintiff's pond, through the watercourse, after the construction of the defendant's pond than before, by reason of the raising of the defendant's draw-gate from time to time, the overflow from the pond, and leakage. Both ponds were used for ice-cutting purposes only.

The defendant requested the judge to rule, that, " If, because of the defendant's opening up new sources of supply to his pond, the overflow or amount that ran down to the plaintiff's pond was equal to or larger than before, then the plaintiff cannot recover."

The judge declined so to rule, saying to the jury, that, if they were satisfied that the defendant had wrongfully interfered to prevent the flow of a natural watercourse to the plaintiff's pond, they were not authorized to find that he had furnished in the manner claimed an equivalent supply.

The jury returned a verdict for the plaintiff in the sum of $22.27; and the defendant alleged exceptions to the refusal to rule as requested.

*B. F. Brickett & C. H. Poor*, for the defendant.

*H. P. Moulton*, for the plaintiff.

GARDNER, J. The ruling requested by the defendant excluded all reference to the supply of water to the plaintiff's pond being dependent upon the raising of the defendant's draw-gate. It was limited to this: that, if by the defendant's opening up new sources of supply to his pond, the overflow or amount of water that ran down to the plaintiff's pond was equal to or larger than before, the plaintiff could not recover. The judge refused to give this instruction, but ruled that, if the defendant had wrongfully interfered to prevent the flow of a natural watercourse to the plaintiff's pond, the jury were not authorized to find that the defendant had furnished, in the manner claimed, an equivalent supply. The manner claimed by the defendant was by " the raising of the defendant's draw-gate from time to time, the overflow of the pond, and leakage." This was not in compliance with the rule of law governing the use of water by a riparian proprietor upon a natural stream, which is that he should use the water in such a manner that every riparian proprietor farther down the stream should have the use and enjoyment of it substantially according to its natural flow, subject to such interruption as is necessary and unavoidable by the reasonable and proper use of the water in the stream above. *Chandler* v. *Howland,* 7 Gray, 348. The supply must not depend upon the convenience or caprice of the owner up the stream, upon accident, or mere chance. The proprietor below is entitled to have the water flow to him in its accustomed channel, as it had been wont to run through his land.

Even if the plaintiff hitherto, and since the acts of the defendant complained of, has received all the water which ran to his pond before the excavation of the plaintiff's pond, the instruction prayed for should not, upon the evidence, have been given. The law is well settled, that, where an act is done which violates the right of another, and which is of such a character "that, if it be continued for a sufficient period of time, the wrongdoer may acquire a title by adverse possession or presumption of a grant, the person whose rights are violated may maintain an action therefor without proof of any other actual damages." *Lund* v. *New Bedford,* 121 Mass. 286, 290. *White* v. *Chapin,* 12 Allen, 516. The invasion of a right, if persisted in for sufficient length of time, may result in the extinction of such right.

In the case at bar, the water to the plaintiff's pond came, in addition to overflow and leakage, from the raising of the draw-gate at the defendant's pond. If the water overflowed the defendant's pond at all times, so that the plaintiff would always have all the water which he was accustomed to have before the acts of the defendant complained of, the prayer requested by the defendant should have been given. But the evidence shows that the plaintiff obtains his equivalent volume of water, not from the natural, continued, and uninterrupted flow of the water from the defendant's pond, but by the opening of his draw-gate, at his pleasure, and whenever he thinks proper. In time, by furnishing water to the stream in such manner, the defendant may acquire an absolute right, under which he may refuse to open his draw-gate, and thus supply water to the plaintiff's pond. The instruction given to the jury recognizes this principle.

The evidence disclosed the fact, that, in excavating for his pond, the defendant tapped a spring in land adjoining his own, and conducted the water flowing therefrom to his pond, and that the water from this spring supplied his pond to a very large extent. If the spring was situated upon the adjoining land, in such way that the owner thereof could divert the water flowing therefrom to the defendant's pond, as he would have the right to do, this is an additional reason why the prayer of the defendant should have been refused, and the instruction objected to given.

The plaintiff relies upon *Elliot* v. *Fitchburg Railroad*, 10 Cush. 191. In that case, the presiding judge instructed the jury that, unless the plaintiff suffered actual perceptible damage in consequence of the diversion of water by the defendant, he could not recover, and that if the defendant, by excavating a reservoir and spring above its dam, or by digging ditches, had increased the flow of water in the brook equal to the quantity of water it had diverted therefrom, it was not liable. The instructions given were sustained. There was no question raised of any encroachment upon the rights of the plaintiff, by which in time he might be entirely deprived of them. This marks the distinction between that case and the one at bar.

*Exceptions overruled.*