JOHN TOTEL

*v.*

ESAIE BONNEFOY *et al.*

*Filed at Ottawa January 19, 1888.*

1. SURFACE WATERS—*natural easement over lands of another.* Where the situation of two adjoining tracts of land is such that the water falling or collected by melting snow, or the like, upon one, naturally descends upon the other, it must be suffered by the lower proprietor to be discharged upon his land, if desired by the owner of the upper tract. The owner of the higher land will have a natural easement to have the water from the same flow upon the lower tract, which is charged with a corresponding servitude.

2. SAME—*prescriptive right to drainage over the land of another.* The owner of land had the use of a ditch for the drainage of the water from his land over that of another, from 1861 to 1877, when a new ditch was made near the former, the old one being filled up, and he had the use of the new ditch until some time in 1882: *Held,* that such former land owner did not thereby acquire a prescriptive right to have the surface water from his land drained over that of the adjoining owner, and that the time of the use of the new ditch could not be added to the time of the use of the old one, to make a prescriptive period of twenty years.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of La Salle county; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. BULL, STRAWN & RUGER, for the appellant:

The change or partial change in the location of the new ditch can not be urged against our prescriptive right so clearly established. *Peck* v. *Herrington,* 109 Ill. 611; *Vail* v. *Mix,* 74 id. 127; *Earl* v. *DeHart,* 1 Beasley's Ch. 280; *White* v. *Chapin,* 12 Allen, 516.

A dam need not be maintained upon the same spot for twenty years, to establish a prescriptive right. Angell on Water-courses, sec. 383 b; 2 Washburn on Real Prop. 323.

The evidence showed that the natural flow of the water was substantially on the line of the ditch, giving appellant a natural easement.

Messrs. Duncan, O'Conner & Gilbert, for the appellees:

The facts fail to show a prescriptive right. 2 Washburn on Real Prop. 321, 322, 325-328; *City of Quincy* v. *Jones,* 76 Ill. 231; *Railway Co.* v. *Hoag,* 90 id. 339; *Ingals* v. *Plamondon,* 75 id. 118.

Mr. Justice Magruder delivered the opinion of the Court:

This is a bill filed on April 17, 1882, in the circuit court of La Salle county by appellant, to prevent the appellees from damming up and obstructing a ditch extending across their lands from appellant's land, and through which the surface water on appellant's land was drained off into a neighboring creek. Appellant claims a natural and prescriptive easement in the ditch in question. The circuit court dissolved the injunction, which had been issued, and dismissed the bill, and its decree has been affirmed by the Appellate Court.

Appellee, Bonnefoy, owns the west half of the north-west quarter of section 17, township 34, range 3 east, in La Salle county. Appellee Douvia owns the east half of the north-west quarter of said section. Appellant owns the south-west quarter of said section.

In 1861, the whole of the north-west quarter was owned by one King, and occupied by Michael Callahan, as tenant of King. At that time, Totel, the appellant, owned the east half of the south-west quarter, and one Boissonas owned the west half of the south-west quarter.

In the fall of 1861 Boissonas and Callahan, with the consent and approval of King, constructed a ditch through the center of the north-west quarter, and running from the north line of the south-west quarter to a slough in the northern part of the north-west quarter. The course of this ditch, which is

spoken of in the testimony as the old ditch, was a little west of the dividing line between the west half of the north-west quarter and the east half of the north-west quarter. It was made for the purpose of draining the water into Buck creek from the west half of the south-west quarter, then belonging to Boissonas, and from the north-west quarter, then belonging to King.

Appellant afterwards bought the west half of the south-west quarter from Boissonas, and thus became the owner of the whole of the south-west quarter. One Peter Carpenter subsequently became the owner of the west half of the north-west quarter, and sold it to appellee, Bonnefoy, who owns it at the present time. One Maurice Keating subsequently became the owner of the east half of the north-west quarter, and sold it to appellee, Douvia, who now owns the same.

The ditch, so constructed in the fall of 1861, was used for the purpose of draining the water from the south-west quarter of the section from that time up to the year 1877, a period of sixteen years.

In 1877, Carpenter, Douvia and appellant constructed what is called the new ditch from the south to the north line of the north-west quarter on the line between the east half and the west half of the north-west quarter and from fifteen to twenty or twenty-five feet east of the old ditch. This new ditch was constructed by the joint labors of appellant as the owner of the south-west quarter, and of Carpenter and Douvia as the owners of the north-west quarter, and for the joint and mutual benefit of all such owners. In digging the ditch, Carpenter furnished one team, Douvia one team, and the appellant two teams.

After the new ditch was constructed in 1877, it still continued to be used for the purpose of draining appellant's property, the south-west quarter of the section, up to the spring of 1882, when it was obstructed, as above stated. The proof shows it to have been wider and deeper than the old ditch.

Two questions are presented for our consideration. The first arises out of the claim made by appellant, that he has a prescriptive right to maintain and keep open a ditch through the north-west quarter of the section on or near the dividing line between the east half and west half thereof by reason of the fact, that one had been dug and maintained by him and his grantors for more than twenty years prior to the wrongful acts complained of, and that, for more than twenty years, such right of drainage across the north-west quarter had existed in the owners of the south-west quarter without question, and hence that an easement existed by prescription.

In *Vail et al.* v. *Mix et al.* 74 Ill. 127, we held that a right to overflow land may, like easements in general, be acquired by an uninterrupted and adverse enjoyment for twenty years. In this case the evidence shows that the owners of the south-west quarter used the old ditch for the purpose of draining off their surface water, from the fall of 1861, to 1877, and that they used what is called the new ditch for such purpose, from 1877 to the spring of 1882. We do not deem it necessary to examine further into the facts of this case to determine, whether an easement in the old ditch would have been acquired by prescription, if the appellant and his grantor, Boissonas, had used the old ditch, for the purpose of drainage, for a period of twenty years. It appears from the undisputed evidence in the case, that such old ditch was only used for such purpose for a period of about sixteen years. It was then filled up and a new ditch was dug on a line some twenty or twenty-five feet to the eastward. The latter ditch, built in 1877, was used for the purpose of draining the south-west quarter for a period of more than four years, and up to the time of the making of the obstructions complained of. There was no continued and uninterrupted use of either one of the ditches for a period of twenty years. We do not think, that the time of the use of the new ditch can be added to or tacked

on to the time of the use of the old ditch so as to make a pre-scriptive period of twenty years.

It seems to be held in a number of cases in Massachusetts, that, under such a state of facts as is here presented, the right to an easement in the new ditch would be acquired by prescription. But Washburn in his work on Real Property, (5th ed. vol. 2, pp. 357, 358,) in an exhaustive note, reviews the authorities upon the subject, and comes to the conclusion, that the Massachusetts decisions are not sustained by the weight of authority. He says, in regard to the case of *Pope* v. *Devereux,* 5 Gray, 409, as follows: "If it maintains the doctrine that an existing easement may be exchanged by parol for another easement of the same kind, and the owner thereby acquire the same property in the new one as he had in the former, and a title to the same, equally valid, it is apprehended that it can not be sustained either upon principle or authority." We are, therefore, of opinion, that no right to the use of the ditch made in 1877, which is the ditch that was obstructed by appellees, was acquired by prescription.

The second question, presented by the record, arises upon the claim of the appellant, that he had a natural easement to the drainage in question by reason of the fact, that the natural flow of water was on substantially the same line as the ditch in controversy, and that there was, in a state of nature, a bed or channel of a branch of Buck creek, through which the surface water flowed long prior to the construction of the ditch, and that the ditch simply enabled the water to pass off, in substantially the same course, more rapidly.

In *Peck et al.* v. *Herrington,* 109 Ill. 611, we said: "It may be regarded, as a well settled principle of law, that, where two farms adjoin and one lies lower than the other, the lower farm will be subject to the natural flow of water from the one, which lies in a more elevated position. * * * The owner of the upper field in such a case has a natural easement, as it is

42—123 Ill.

called, to have the water, that falls upon his own land, flow off the same upon the field below, which is charged with a corresponding servitude in the nature of dominant and servient tenements." Washburn on Easements and Servitudes, page 353, says: "It may be stated, as a general principle, that, by the civil law, where the situation of two adjoining fields is such that the water falling or collected by melting snow, or the like, upon one, naturally descends upon the other, it must be suffered by the lower one to be discharged upon his land if desired by the owner of the upper field."

Such being the law, it becomes a question of fact whether, in this particular case, appellant was entitled to the natural easement above mentioned. As we understand the contentions of the parties, it is claimed, on the part of the appellant, that the natural flow of water from appellant's land was northerly through the middle of the north-west quarter, and on the part of the appellees, that such natural flow was north-easterly through the south-east corner of that quarter. Ten witnesses sustained the position of the appellant on this question, and eight witnesses supported the position of the appellees. There was thus a sharp conflict between the testimony on the one side and on the other. The chancellor, who tried the case in the court below, saw the witnesses and heard their evidence. He came to the conclusion, that, upon this question of fact, the merits of the controversy were with appellees. After a careful examination of the evidence, we are not prepared to say, that the conclusion reached by the circuit judge is not correct.

The judgments of the circuit and Appellate courts are therefore affirmed.

*Judgment affirmed.*