[Civil No. 222.  Filed February 20, 1888.]

[S. C. 17 Pac. 453.]

A. S. CLOUGH, Plaintiff and Appellant, v. JAMES E. WING, Defendant and Appellee.

1. EQUITY—JURY—VERDICT—ADVISORY.—Upon an issue out of chancery the verdict of a jury can be only advisory.

2. IRRIGATION—INJUNCTION TO RESTRAIN DIVERSION—DENIED WHERE NO INJURY SHOWN—WATER SUFFICIENT FOR BOTH PARTIES.—

Where the evidence shows that at all times there was sufficient water for the lands of both parties, plaintiff has no right to injunction restraining defendant from diversion and use of water.

3. SAME—APPROPRIATION—BENEFICIAL USE MEASURE OF RIGHT—REASONABLE USE—SUBSEQUENT APPROPRIATORS.—An appropriator of water for irrigation is entitled to so much water only as is necessary to irrigate his land, and is bound to make a reasonable use of it. Subsequent appropriators rights to the residue of the stream or to the whole thereof at times the water is not needed by prior appropriators complete.

4. SAME—COMMON LAW—RIPARIAN RIGHTS DO NOT EXIST—USE OF WATER FOR IRRIGATION—REV. ST. U. S. 1878, SEC. 2339-2340; COMP. LAWS ARIZ. 1877, par. 3240-42-43 CITED—COMMON LAW INAPPLICABLE TO RIGHT TO USE OF WATER.—The riparian rights of the common law do not exist in this territory. All right in water in non-navigable streams in Arizona is subservient to use in tilling the soil. This principle is recognized by Acts of Congress, *supra,* and by the legislature in par. 3240-42-43. The Territory of Arizona was formerly subject to the laws of Mexico and the common law was unknown; and that law so far as applicable to the uses of water is not suited to the conditions that exist here.

5. SAME—EVIDENCE—LOCAL CUSTOMS—JUDICIAL KNOWLEDGE.—"Local customs" in reference to the use of water do not require proof. The courts take knowledge of them as of the public laws.

6. SAME—APPROPRIATION—DEFINED.—What constitutes an appropriation is largely a question of fact. Appropriation is the intent to take, accompanied by some open, physical demonstration of the intent and for some valuable use.

APPEAL from the District Court of the Third Judicial District in and for the County of Yavapai. J. C. Shields, Judge. Affirmed.

The facts are stated in the opinion.

John A. Rush and E. W. Wells, for Appellants.

Plaintiff claims right to the use of so much of the waters of Granite creek as is necessary to irrigate his premises described in his complaint, by virtue of prior appropriation of such waters by himself and grantors, and bases this right

upon the act of Congress of July, 1886, and the custom, judicial decisions and laws of the Territory of Arizona. Rev. St. U. S., secs. 2338, 2339 and 2340; *Kaler* v. *Campbell,* 13 Or. 596, 11 Pac. 301.

The learned judge who rendered the decision and judgment in the court below seemed to question whether the act of Congress was intended to cover water rights acquired after its passage, or was confined in its effect alone to vested water rights existing at the time of its passage.

There can be no doubt upon this question. The act controls and governs water rights acquired since, as well as before its passage. The doctrine of riparian right, as fixed by the common law, was based upon the theory that the water flowing in a stream running through or adjoining the land was incident thereto, and that a conveyance of the land carried with it the incident, but this theory can have no controlling effect in this case. The government is primarily the owner of the land and the user of the water, and as such owner can unquestionably separate the land and the uses of the water, if it so chooses. It may grant the land to one and the use of the water to another.

Water rights acquired subsequent to the act of Congress are controlled and affected by it. *Kaler* v. *Campbell,* 13 Or. 596, 11 Pac. Rep. 301; *Osgood* v. *Eldorado M. Co.,* 56 Cal. 571; *Farley* v. *Spring Valley M. Co.,* 58 Cal. 142; *Jones* v. *Adams,* 19 Nev. 78, 6 Pac. 442; *Broder* v. *Water Co.,* 101 U. S. 274; *Basey* v. *Gallagher,* 20 Wall. 670.

As to the effect of act of Congress upon riparian right, see *Barnes* v. *Sabron,* 10 Nev. 233-238; *Kaler* v. *Campbell, supra; Judkins* v. *Elliott,* (Cal.) 12 Pac. 116.

Where the right of prior appropriation of water is founded either upon custom, the decisions of courts or the law of the state or territory, it is sufficient to bring it within the purview of the act of Congress. It is not necessary that all three of the conditions exist in any one case. *Basey* v. *Gallagher,* 20 Wall. 670.

The right to prior appropriation of water is established

in principle by the laws of the Territory. Secs. 1, 3, 7, 17, pp. 538, 539, Comp. Laws; Article 22, Bill of Rights.

The point of diversion of water from a flowing stream may be changed at any time after appropriation if the change does not conflict with existing rights of others. *Kidd v. Laird,* 15 Cal. 179, 79 Am. Dec. 472; *Junkans v. Bergen,* 67 Cal. 270, 7 Pac. 684.

The measure of the water appropriated is the capacity of the ditches and flumes of the appropriator if no other measure be fixed, such as so many inches of water, provided all the water the ditches and flumes will carry be necessary for the purposes it was appropriated. *Barnes v. Sabron,* 10 Nev. 245.

The appropriation of water is not limited to the amount actually used the first year. The appropriator may not be able to reduce to cultivation the land for which the water was appropriated the first year. Until the whole of the land for which the water was originally appropriated is reduced to cultivation, so long as he uses reasonable diligence in fitting his land for the use of the water, the law protects him in the right. *Barnes v. Sabron, supra.*

The issues found by the jury were in favor of the plaintiff, and were in accordance with, and supported by, the evidence. Upon this verdict plaintiff was entitled to judgment and decree, as prayed for in his complaint. But the learned judge claimed that the verdict was merely advisory, and concluded to disregard it and decide the case independent of and contrary to it. We admit that in an equity case the Court, in its discretion, may treat the verdict of a jury as advisory, and wholly disregard it, but when the issues found by the jury are conclusive of the rights of the parties, and the verdict is in accordance with the weight of the evidence, then for the court to disregard the verdict and render judgment contrary thereto, is an arbitrary exercise of that judgment which this court should correct.

The Court below finds that the plaintiff stood by and saw Wing build his ditches for the purpose of taking the water, and made no objection, and is therefore estopped from dis-

puting defendant's claim to the water. Bearing in mind that defendant built his ditches, in 1884, when there was an excess of water; that during each year there was more water than plaintiff needed, except during the dry season, to-wit: the months of May, June and July of each year; that plaintiff had no claim or right to this surplus, plaintiff is not estopped from disputing defendant's claim to water covered by plaintiff's prior appropriation. *Anaheim Water Co.* v. *Semi Tropic Water Co.,* 64 Cal. 195, 30 Pac. 623; *Dorlarque* v. *Cress,* 71 Ill. 380; *Weise* v. *Moore,* 22 Mo. App. 537-8; *Alexander* v. *Kerr,* 2 Rawle (Pa.) 83, 19 Am. Dec. 169.

Herndon and Hawkins, for Appellee.

This is an equitable proceeding. The verdict of the jury in such a case is merely advisory to the court, and is not conclusive, but may be disregarded by the Chancellor. *Basey* v. *Gallagher,* 20 Wall. 681.

The Court found that before defendant built any ditches or flumes, or went to any expense, plaintiff told defendant there was a surplus of water over and above what he needed; that to this surplus plaintiff had no claim, and that defendant might use it; that shortly after this talk defendant began the construction of his ditches; that the plaintiff took no steps to stop the defendant, but stood by and watched the defendant use the water for a period without complaint.

The plaintiff is estopped from questioning the legality of the act he then sanctioned, to the prejudice of defendant, who had given faith to his words, and to the fair inference to be drawn from his conduct. *Dalton* v. *Rentaria,* 2 Ariz. 275, 15 Pac. 37-42; *Dickerson* v. *Colgrove,* 100 U. S. 578; *Kirk* v. *Hamilton,* 102 U. S. 68.

The right to appropriate water is subject to two conditions, (1) That the appropriation must be for some useful purpose. (2) That economy and care must be employed in the use thereof. *Weaver* v. *Eureka Lake Co.,* 15 Cal. 271; *Basey* v. *Gallagher,* 20 Wall. 681; *Davis* v. *Gale,* 32 Cal. 26, 91 Am. Dec. 554.

As to whether the use of the water by Clough was econom-

ical and careful, and as to whether his ditches, flumes and dams were so constructed as to save the water, there was a conflict of evidence, and where such a substantial conflict exists in the evidence, this court will not disturb the findings and decisions of the .Chancellor unless gross injustice has been done. *Gammans* v. *Rousel,* 14 Nev. 171; *Barnes* v. *Sabron,* 10 Nev. 243.

When the rights of subsequent appropriators attach, the prior appropriator cannot encroach thereon by extending his rights beyond his first appropriation. *Nev. Water Co.* v. *Powell,* 34 Cal. 118, 91 Am. Dec. 685.

The quantity of water appropriated in any case is to be measured by the capacity of the ditch or flume at the smallest point; that is at the point where the least water can be carried through it. *Ophir Silver Mining Co.* v. *Carpenter,* 6 Nev. 393.

Plaintiff's appropriation, when made, applied to the then condition of the stream. *Barnes* v. *Sabron, supra.*

The conflict in the evidence is substantial, and the findings should not be set aside. *Alhambra Addition Water Co.* v. *Richardson,* 72 Cal. 598, 14 Pac. 383.

BARNES, J.—This was a complaint filed by Clough in which he sought to enjoin defendant, Wing, from taking water from Granite creek, to his injury. He alleges that he has occupied a tract of land, about 200 acres, describing it, and has for some 15 years cultivated the same in cereals, and has set out orchards and vineyards, and that the same have by his husbandry become of great value; that except by irrigation these results could not have been accomplished, and without constant continuance of the same all would be lost; that in the year 1869 he located and appropriated sufficient of the waters flowing in Granite creek to properly irrigate the same by building flumes and digging canals in which to convey the said water from said creek upon his lands, and so he did convey the water from said creek, and did use said water as aforesaid until now; that, in 1884, defendant, knowing of plaintiff's prior right and appropriation

of said water, settled upon and occupied lands on said creek above plaintiff, and placed dams and other obstructions to the flow of the water in said creek, and constructed flumes and ditches for the purpose of diverting said water, and irrigating his lands; that between the 15th and 29th of June, 1885, he was thereby deprived of sufficient water to irrigate his lands. He prays that defendant be perpetually enjoined from using any of the water of Granite creek when needed by plaintiff as aforesaid. Defendant sets up his appropriation of water in 1884, and his use thereafter of enough to irrigate his lands, and that he has made valuable improvements, set out orchards, etc., and he alleges that plaintiff's flumes and ditches were out of repair, and wasted the water; that plaintiff in 1885 made further and additional appropriation of water by widening and building up his dam, but so that the water seeped through the same, and was lost; and denies that the water appropriated and used by him hindered plaintiff in the use of the amount of water appropriated by him, and to the use of which he had a right. Issues were framed in the form of eight questions, and a jury was impaneled to try said issues. The evidence is very voluminous as to the amount of water flowing in Granite creek, and as to whether defendant's use deprived plaintiff of the water he needed; as to the capacity of his flume, etc.,—all directed to the question whether he was injured by defendant's use of the water. The jury answered the questions, but the court saw fit to disregard the verdict of the jury, which, as an issue out of chancery, could be only advisory, and decided the case.

The court found that the evidence showed that ''at the time of the alleged wrong, and at all times since defendant went upon his lands, there was and has been water enough for both parties.'' A careful consideration of the evidence leads us to the same conclusion. This fact settled, the plaintiff had no right to the relief he sought. *Barnes* v. *Sabron,* 10 Nev. 217; *Atchison* v. *Petersen,* 20 Wall. 507; *Basey* v. *Gallagher,* 20 Wall. 670. In the former case the court say: ''If the plaintiff did not require the full amount of his appropria-

tion, he could not hold the defendant responsible in damages for not turning it down to him; he was only entitled to as much water within his original appropriation as was necessary to irrigate his land, and was bound under the law to make a reasonable use of it. In a dry, arid country like Nevada, where the rains are insufficient to moisten the earth, and irrigation becomes necessary for the successful raising of crops, the rights of prior appropriators must be confined to a reasonable and necessary use. The agricultural resources of the state cannot be developed, and our valley lands cannot be cultivated without the use of water from the streams to cause the earth to bring forth its precious fruits. No person can, by virtue of a prior appropriation, claim or hold any more water than is necessary for the purpose of the appropriation. Reason is the life of the law; and it would be unreasonable and unjust for any person to appropriate all the waters of a creek when it was not necessary to use the same for the purposes of his appropriation. The law which recognizes the vested rights of prior appropriators has always confined such rights within reasonable limits.'' And in the latter case the same proposition: ''For this right to water, like the right by prior occupancy to mining grounds, is not unrestricted. It must be exercised with reference to the general conditions of the country, and the necessities of the people; and not so as to deprive a whole neighborhood or community of its use, and vest an absolute monopoly in a single individual.'' Again, in the same opinion, it is further stated: ''We think the rule is well settled, upon reason and authority, that, if the first appropriator only appropriates a part of the waters of a stream for a certain period of time, any other person or persons may not only appropriate a part or the whole of the residue, and acquire a right thereto as perfect as the first appropriator, but may also acquire a right to the quantity of water used by the first appropriator at such times as not needed or used by him. In other words, if plaintiff only appropriated the water during certain days in the week, or during a certain number of days in a month, then defendants would be entitled to its use in the other days of the week or the other days in the month.''

These cases state a doctrine very different from the common law. That law had its origin in the island of Great Britain, under conditions of climate peculiar to its position, in the path of the Gulf stream, in an atmosphere laden with moisture, which is precipitated with lavish profusion upon that favored spot. That law gave to the servient and dominant heritage the right to the natural flow of the water. The riparian owner might use the water in its course to turn his water-wheel, or for other purposes, but was required to restore the same to its natural course. While he might not hinder the flow so as to injure those below him, he might depasture his domestic animals so as to drink therefrom, and take water for domestic uses. He might not drain his land so as to increase the flood to injure those below, or dam the water back upon the lands above him. 1 Inst. 4; 2 Bl. Comm. 18; Ang. Water-Courses, 8; 3 Kent, Comm. 561; *Elliott* v. *Fitchburg Co.,* 10 Cush. 193, 57 Am. Dec. 85; *Wright* v. *Howard,* 1 Sim. & S. 190; *Lux* v. *Haggin,* 4 Pac. (Cal.) 919; *Weiss* v. *Steel Co.,* 13 Or. 496, 11 Pac. 255; *Hill* v. *Lenormand,* 2 Ariz. 354, 16 Pac. 266; *Ware* v. *Allen,* 140 Mass. 513, 5 N. E. 629; *Mason* v. *Cotton,* 4 Fed. 792; *Dumont* v. *Kellogg,* 29 Mich. 420, 18 Am. Rep. 102; *Jones* v. *Adams,* 19 Nev. 78, 3 Am. St. Rep. 788, 6 Pac. 442; *Pyle* v. *Richards,* 17 Neb. 180, 22 N. W. 370; *Van Orsdol* v. *Railway Co.,* 56 Iowa, 470, 9 N. W. 379; *Union Pac. Ry. Co.* v. *Dyche,* 31 Kan. 120, 1 Pac. 243; *Red River Co.* v. *Wright,* 30 Minn. 249, 44 Am. Rep. 194, 15 N. W. 167; *Creighton* v. *Kaneath etc. Irr. Co.,* 67 Cal. 221, 7 Pac. 658; *Moore* v. *Clearlake Co.,* (Cal.) 5 Pac. 494; *Wilcox* v. *Hausch,* 64 Cal. 461, 3 Pac. 108; *Larimer Co.* v. *People,* 8 Colo. 614, 9 Pac. 794; *Garwood* v. *Railway Co.,* 83 N. Y. 400, 38 Am. Rep. 452; *Railroad Co.* v. *Miller,* 112 Pa. St. 34, 3 Atl. 780; *Totel* v. *Bonnefoy,* 123 Ill. 653, 5 Am. St. Rep. 570, 14 N. E. Rep. 687; *Peck* v. *Herrington,* 109 Ill. 611, 50 Am. Rep. 627. The problem there to be solved was how best to drain the water off the land, and get rid of it; not how to save it, to be conducted upon the land in aid of the husbandman. The latter has been the problem in the arid portions

of the earth. From "time whereof the memory of man runneth not to the contrary," ·the rights of riparian owners were settled in the common law; and the right to appropriate and use water for irrigation has been recognized longer than history, and since earlier than tradition. Evidences of it are to be found all over Arizona and New Mexico in the ancient canals of a pre-historic people, who once composed a dense and highly civilized population. These canals are now plainly marked, and some modern canals follow the track and use the work of this forgotten people. The native tribes, the Pimas and Papagoes and other pueblo Indians, now, as they for generations have done, appropriate and use the waters of these streams in husbandry, and sacredly recognize the rights acquired by long use, and no right of a riparian owner is thought of. The only right in water is found· in the right to conduct the same through their canals to their fields, there to use the same in irrigation. The same was found to prevail in Mexico among the. Aztecs, the Toltecs, the Vaquis, and other tribes at the time of the conquest, and remained undisturbed in the jurisprudence of that country until now. It existed, also, in Peru, though there the appropriation was by the state, which constructed and maintained the canals so as to provide water for the use of the tillers of the soil. The Spanish conquerors brought the same ideas with them from Spain, where they prevailed then as now. Escriche, tit. "Agua," § § III, IV, and "Acequia." "The Lombard kings, following the Roman practice, encouraged and extended irrigation in Italy. From Lombardy the art extended to France; while the Moors encouraged it in Spain, Sicily, and Algeria." Ency. Brit. (9th Ed.) "Necessity required it in the districts which comprise parts of the south of Spain, Portugal, and Italy, including Sicily and Greece." Id. Ruins of ancient irrigating works are found in Spain. Id. In Egypt, and in some parts of Persia, India, and China, this form of husbandry has been practiced from time immemorial, and still continues. Under the civil law, water was *publici juris,* and by that law the "first person who chooses to appropriate a natural stream to a useful purpose has

title against the owner of the land below, and may deprive him of the benefit of the natural flow of the water." Per Denman in *Mason* v. *Hill*, 5 Barn. & Adol. 1.

Thus we see that this is the oldest method of skilled husbandry, and probably a large number of the human race have ever depended upon artificial irrigation for their food products. The riparian rights of the common law could not exist under such systems; and a higher antiquity, a better reason, and more beneficent results have flowed from the doctrine that all right in water in non-navigable streams must be subservient to its use in tilling the soil. Recognizing these principles, the acts of congress March 26, 1866, extended them over the public domain wherever applicable; and all patents (16 St. U. S. §17) to land are subject to these rights to the use of water. By that act it is provided that "whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same." The legislature of Arizona at its first session, in 1864, enacted that (C. L. 3240) "all rivers, creeks, and streams of running water are hereby declared public, and applicable to the purposes of irrigation and mining; [3242] all the inhabitants who own or possess arable and irrigable lands shall have the right to construct public or private *acequias* [canals] and obtain the necessary water for the same from any convenient river, creek, or stream of running water;" (3243) and prohibits the obstruction of such canals, "as the right to irrigate the fields shall be preferable to all others." Up to about a third of a century ago, and but recently before this enactment, the territory of Arizona had been subject to the laws and customs of Mexico, and the common law had been unknown; and that law has never been, and is not now, suited to conditions that exist here, so far as the same applies to the uses of water. *Atchison* v. *Petersen, supra; Basey* v. *Gallagher, supra; McClintock* v. *Bryden,* 5 Cal. 100, 63 Am. Dec. 87; *People* v.

*Canal Appraisers,* 33 N. Y. 482; *Barnes* v. *Sabron, supra; Ophir Co.* v. *Carpenter,* 4 Nev. 534, 97 Am. Dec. 550; *Lobdell* v. *Simpson,* 2 Nev. 274, 90 Am. Dec. 537; *Strait* v. *Brown,* 16 Nev. 317, 40 Am. Rep. 497; *Crane* v. *Winsor,* 2 Utah, 248; *Schilling* v. *Rominger,* 4 Colo. 100; *Canal Co.* v. *Hoyt,* 57 Cal. 44. See *Lux* v. *Haggin,* (Cal.) 4 Pac. Rep. 919; *Judkins* v. *Elliott,* (Cal.) 12 Pac. Rep. 116; *Kaler* v. *Campbell,* 13 Or. 596, 11 Pac. Rep. 301. For a discussion of the Mexican law, see *Lux* v. *Haggin,* 69 Cal. 255, 10 Pac. Rep. 705-719; Editorial Notes, (Pomeroy,) 1 and 2 West Coast Rep.

The "local customs" of the act of 1866, so far at least as it refers to rights to the use of water, is not a mere usage or custom, requiring proofs of undisturbed continuance beyond the memory of man. 1 Greenl. Ev. § 128. The courts take knowledge of them as of the public laws. "The general customs and usages of merchants, as well as the public statutes and general laws and customs of their own country, as well ecclesiastical as civil, are recognized, without proof, by the courts of all civilized nations." 1 Greenl. Ev. § 5, and cases cited. In *Atchison* v. *Petersen* the court, without proof, took knowledge of the existence of these customs; so, of judicial decisions. The court below did not err, therefore, in excluding the judgment roll offered by plaintiff; and the oral proof of local custom could do no harm, but was not necessary.

What constitutes such appropriation is largely a question of fact. The supreme court of California defines the word "appropriation" as follows: "This appropriation is the intent to take, accompanied by some open, physical demonstration of the intent, and for some valuable use." (*McDonald* v. *Bear River Co.,* 13 Cal. 220;) and the supreme court of Colorado, quoting, approves this definition. "When the individual, by some open, physical demonstration, indicates an intent to take for a valuable or beneficial use, and, through such demonstration, ultimately succeeds in applying the water to the use designed, there is such an appropriation." "While a diversion must of necessity take place before the water is actually applied to the irigation of the soil, the appropriation thereof is, in legal contemplation, made when

the act evidencing the intent is performed.   Of course, such initial act must be followed up with reasonable diligence, and the purpose must be consummated without unnecessary delay."   *Larimer Co.* v. *People,* 8 Colo. 614, 9 Pac. Rep. 794; *Lehi Co.* v. *Moyle,* 4 Utah, 327, 9 Pac. Rep. 867.   We think the appropriation of water as alleged was clearly established by both plaintiff and defendant.   The judgment is affirmed.

Wright, C. J., concurs.