## New England Cotton Yarn Company *vs.* Laurel Lake Mills.

Bristol.    October 25, 1905. — January 2, 1906.

Present: Knowlton, C. J., Lathrop, Hammond, Loring, & Sheldon, JJ.

*Watercourse.    Contract.    Mills and Mill Owners.*

In an action of tort by one manufacturing corporation against another, they being adjoining riparian owners on a natural watercourse and the plaintiff's mill being below that of the defendant, for withdrawing water from the stream and returning it below the plaintiff's mill instead of above it, so that the plaintiff was deprived of its use, the defendant showed that the plaintiff's grantor, by whose act the plaintiff was bound, by an agreement in writing granted to the defendant for a term of years still unexpired the right and privilege of running its condensing water into a cooling pond of the plaintiff below the plaintiff's mill and "to use said pond, dam and arrangements, as it now uses them, and has so used," and further showed that the use then and previously made by the defendant was to withdraw water from the stream for condensing purposes and instead of returning it into the stream so as to give the plaintiff the benefit of its flow, to discharge it by a different conduit into the plaintiff's cooling pond, where it could not be used by the plaintiff, and that this manner of using the water continued during the first ten years of the existence of the agreement.   The agreement containing the grant to the plaintiff's grantor concluded with this clause : " By executing this instrument neither party waives any rights as riparian owners on said stream." *Held*, that the clause last quoted should be construed as if it read, that no riparian rights other than those granted by the preceding parts of the agreement were waived by either party, and consequently that the defendant, having established its right to do the acts complained of by the plaintiff, was entitled to judgment.

Tort, by a corporation organized under the laws of the State of New Jersey, maintaining a mill operated by steam at Fall River situated on a natural watercourse known as Cook Pond Outlet Stream, against a corporation organized under the laws of this Commonwealth, maintaining a mill and steam plant on

the same stream adjoining and next above the land of the plaintiff, for the alleged wrongful diversion of large quantities of water from the stream and depriving the plaintiff of its use. Writ dated April 5, 1901.

The defendant's answer alleged that the acts complained of were done under and in compliance with the terms of an instrument in writing under seal executed by the plaintiff's grantor, the Globe Yarn Mills, and the defendant. This instrument is quoted in the opinion.

In the Superior Court the case was heard upon an agreed statement of facts by *Pierce*, J., who ordered judgment for the defendant. The plaintiff appealed.

The case was argued at the bar in October, 1905, before *Knowlton*, C. J., *Lathrop*, *Loring*, & *Sheldon*, JJ., and afterwards was submitted on briefs to all the justices except *Morton* & *Braley*, JJ.

*O. Prescott, Jr.*, for the plaintiff.

*L. E. Wood*, for the defendant.

SHELDON, J.   In May, 1889, and for some years before that time, the Globe Yarn Mills and the defendant, both manufacturing corporations, were adjoining riparian owners upon the same natural watercourse, the defendant being the upper owner. Both operated their plants by steam and were accustomed to draw water from the stream for condensing purposes. The Globe Yarn Mills had constructed upon its land a pond and other appliances, which it used to receive and cool the water from its condensing plant, and from which the cooled water returned to the natural stream. The water in this pond is at a lower level than the plant of the Globe Yarn Mills, and is not available for use therein and could not be made so without going to considerable expense to install and maintain a pumping system; it could be made available by this means. The defendant drew its condensing water from the stream at a point within its own land, and after using it discharged it by a pipe or conduit running through its own land into the land of the Globe Yarn Mills and thence into the pond of the latter corporation, where it became cooled and was discharged again into the natural stream, together with the water coming from the Globe Yarn Mills. All the water drawn from the stream by the de-

fendant and used by it for condensing purposes thus became unavailable for use by the Globe Yarn Mills. Under these circumstances, on May 14, 1889, the Globe Yarn Mills and the defendant made the following agreement under seal:

" Whereas: The Globe Yarn Mills a corporation by law established, located and doing business at Fall River, County of Bristol and State of Massachusetts, has built a dam and pond on Cook Pond Outlet Stream, and made certain arrangements whereby the water is cooled after having been used for steam purposes, to the great benefit of said Mills and also of the Laurel Lake Mills, a corporation of said Fall River, now using the same for a like purpose.

" Said pond, dam and arrangements, being west of Mill No. 2 of the property of said Globe Yarn Mills, and wholly on land of said Globe Yarn Mills.

" And said Laurel Lake Mills desire to use the same for the purposes aforesaid.

" Now know all men to whom these presents may come, that the Globe Yarn Mills for itself, and its successors and assigns, in consideration of two hundred and fifty dollars to it paid by the said Laurel Lake Mills the receipt whereof is hereby acknowledged, and of the further sum of one hundred and twenty-five dollars to be paid October 1st, 1889, and of a like sum on October 1st of each and every year thereafter for the term of fifteen years from October 1st, 1888, does hereby grant to said Laurel Lake Mills, its successors and assigns, the right and privilege to run into said Pond its condensing water, and to use said Pond, dam and arrangements, as it now uses them, and has so used, since Oct. 1st, 1886. And the said Laurel Lake Mills for itself and its successors and assigns, does hereby agree to pay to said Globe Yarn Mills, its successors and assigns, said $250 on delivery of this instrument, and said $125 on October 1st, 1889, and $125 on October 1st of each and every year thereafter, for the term of fifteen years, from October 1st, 1888. The expense of keeping said dam, pond and arrangements, in the same repair they are now in shall be borne equally by the parties hereto. By executing this instrument neither party waives any rights as riparian owners on said stream."

In July, 1899, the plaintiff became the owner of the property

of the Globe Yarn Mills, and has continued to own it ever since that time; and there is no dispute that this agreement is binding upon the plaintiff just as if it had been made between these parties themselves. Since then, as before, and up to the time of bringing this action, the defendant has run its condensing water into the pond, and has used the pond and its appliances as it was using them before and when the agreement was made, without waste, in the ordinary course of manufacturing. When the agreement was made, the water in the stream was generally, but not always, sufficient for both parties. Since then the natural flow of the stream has diminished, so that there is not sufficient water in the dry season for both parties, and the plaintiff has been obliged to buy water from the city of Fall River at considerable expense. The defendant has made all the payments provided for in the agreement, and has complied with all the terms thereof, unless it was under an obligation, if required by the plaintiff, after having withdrawn water from the stream and used it for condensing purposes, to return such water cooled into the stream before the stream enters the plaintiff's land. The payments made by the defendant to the Globe Yarn Mills and the plaintiff under the agreement have much exceeded in amount what it would have cost the defendant to install and operate a system for cooling its condensing water and returning it to the stream above the plaintiff's line, if the expense of procuring from some other source an amount of water equivalent to that so taken and discharged by it is included.

The plaintiff's complaint is that the defendant has withdrawn water from the stream for condensing purposes without returning this water cooled to the stream before it enters upon the plaintiff's land, whereby the amount of water available for use by the plaintiff has been diminished below its needs, to its serious damage; and the only question is whether, under the written agreement, the defendant has, as against the plaintiff, the right to do this.

No question is made, or can be made, that if there were no agreement the plaintiff, as a lower riparian owner, has a right to the natural flow of the stream from the defendant's premises into its own, and that the defendant has not the right to divert water from the stream for manufacturing purposes to such an

extent as to deprive the plaintiff of the natural flow of the stream. *Newhall* v. *Ireson*, 8 Cush. 595. *Chandler* v. *Howland*, 7 Gray, 348. *Stowell* v. *Lincoln*, 11 Gray, 434. *Ware* v. *Allen*, 140 Mass. 513, 515. So, too, the plaintiff has the right to have the water come down in its natural condition, unheated and unpolluted. *Walker Ice Co.* v. *American Steel & Wire Co.* 185 Mass. 463. *Dwight Printing Co.* v. *Boston*, 122 Mass. 583. And this is the ground on which the plaintiff rests its contention. But the difficulty with its case is that by the agreement the Globe Yarn Mills, whose act is admitted to be binding on the plaintiff, has granted to the defendant " the right and privilege to run into said pond its condensing water, and to use said pond, dam and arrangements, as it now uses them, and has so used." The use then and previously made by the defendant was to withdraw water from the stream for condensing purposes, and then, instead of returning it cooled into the stream so as to give the plaintiff the benefit of its flow in the stream, to discharge it by a different conduit into the plaintiff's cooling pond, where it could not be used by the plaintiff, though fully available to any lower riparian owners. The right thus given to the defendant was not the right to withdraw water temporarily from the stream; for this right the defendant already had, subject only to the obligation to return such water to the stream properly cooled, without unreasonable detention and in substantially undiminished quantity. *Mannville Co.* v. *Worcester*, 138 Mass. 89, 91, 92. *Springfield* v. *Harris*, 4 Allen, 494, 496. *Thurber* v. *Martin*, 2 Gray, 394, 396. *Newhall* v. *Ireson*, 8 Cush. 595, 599. *Kensit* v. *Great Eastern Railway*, 27 Ch. D. 122. The right granted was, as expressly stated in the agreement, to discharge its water into the pond, at a level where it could not be used by the plaintiff, and to discharge in this way all the defendant's condensing water without restriction as to the source from which it was derived. Clearly this must be so unless the natural interpretation of the granting part of this agreement is altered by the clause, " By executing this instrument neither party waives any rights as riparian owners on said stream." But this clause must be construed in connection with the rest of the agreement. *Allen* v. *Holton*, 20 Pick. 458, 463. *Heywood* v. *Perrin*, 10 Pick. 228. *Ferguson* v. *Union Ins. Co.* 187 Mass. 8. In view

of the fact that both parties at this time used only the water of the stream and that all the defendant's condensing water was then taken from the stream, it is manifest that at any rate some part of the lower proprietor's riparian rights was granted to the defendant.   The agreement would have no effect if the defendant did not acquire by it the right to discharge its heated water into the cooling pond; and all this heated water then came, and apparently was expected to continue to come, from the stream. It seems to us therefore that this clause must be construed as if it read that no other riparian rights than those granted by the preceding parts of the agreement were waived by either party. And it appears from the agreed facts that this was the practical construction put upon the agreement by the original parties to it during the first ten years of its existence; for during the ten years that the Globe Yarn Mills owned the plaintiff's premises, although there was not always sufficient water for both parties, and although the defendant's conduct was continuously the same as now complained of, no such claim as that contended for by the plaintiff ever was made against the defendant.   The gist of the plaintiff's complaint now is not that the defendant tempo. rarily withdraws water from the stream, but that the defendant does not return such water directly to the stream so as to be available for the plaintiff's use, but instead thereof does just what the agreement says that it may do.

Accordingly, without invoking the principle that the language of this grant should be construed most strongly against the grantor, or the other principle, perhaps of less general application, that of two repugnant clauses in a deed the earlier should prevail, neither of which doctrines seems to us to be entitled to much weight in this case, but giving effect to all the language of this agreement, in the light of the then existing circumstances, we are of opinion that it gave to the defendant, as against the plaintiff, the right, instead of returning directly to the stream properly cooled the water which it had drawn therefrom for condensing purposes, to discharge such water into the plaintiff's cooling pond in the manner used when the agreement was made and ever since.

The result is that there must be

*Judgment for the defendant.*