## Mann v. Tacoma Land Co.

*(Circuit Court, D. Washington, W. D.   October 22, 1890.)*

1. SURVEYS OF PUBLIC LANDS.
    Under the land laws of the United States, the line of ordinary high tide on the shore of an arm of the sea is the boundary between the land and the water at which the surveys of the public lands of the United States terminate.
2. PUBLIC LANDS—LOCATION OF SCRIP.
    The act of congress, providing for the issuance of Valentine scrip, and for its location upon unoccupied and unappropriated public land, cannot be so construed as to authorize the entry with said scrip of mud flats bare at low tide, but subject to daily overflow, situated in one of the harbors of a territory, and which has been omitted from the surveys made of public lands surrounding such harbor.

*(Syllabus by the Court.)*

In Equity.

*Judson, Sharpstein & Sullivan* and *P. H. Winston,* for plaintiff.
*Louis D. Campbell,* for defendant.

HANFORD, J. This case has been submitted upon a demurrer to the plaintiff's amended bill. The plaintiff, claiming to own three separate 40-acre tracts of the mud flats in Tacoma harbor, brings this suit for an injunction to prevent the defendant from proceeding further with certain harbor improvements it is making, in front of land it owns abutting upon the shore, which the bill alleges will interfere with plaintiff in the possession and use of the premises which he claims to own. The bill shows that said premises are what is commonly known as "tide-lands," or mud flats, and are situated below the line of ordinary high tide; that they are bare at ordinary low tide, but subject to overflow daily, and are not within the surveys of the public lands of the United States. The plaintiff's claim of title is based upon the location thereon of certain landscrip called "Valentine Scrip." The plaintiff and his vendors were owners of the scrip, and they located the same, and filed the proper certificates and declarations in the United States land-office at Seattle, on October 30, 1889, which time was prior to the president's proclamation making complete the admission into the Union of this state, but subsequent to all the acts of legislation and proceedings leading up to that event. In deciding this case, I shall leave untouched the interesting question as to the power of congress to dispose of tide-lands in a territory, and most of the many other important questions which have been discussed in the very able arguments made before me, my opinion being such that it is unnecessary for me to do more than pass upon the single question as to validity of the plaintiff's claim of title, and a single reason for my opinion upon that question is all that need be given.

The Valentine scrip was issued pursuant to the act of congress of April 5, 1872, (17 St. U. S. 649,) for the relief of Thomas B. Valentine, authorizing scrip to be issued to him, and authorizing him, or his legal representatives, to locate such scrip upon such "unoccupied and unappropriated public lands of the United States," whether surveyed or unsurveyed, as he or his legal representatives, might select. The act provided further that such selection should be made, if on unsurveyed land, so as to conform to the government surveys, when the land should be surveyed, and in tracts of not less than 40 acres. This statute authorizes the location and entry of land, which, at the time of entry, either has been, or remains to be, surveyed and included in the public surveys of the township, according to established and known rules governing the land surveys of the United States. And obviously it was not intended by congress to give Mr. Valentine, his representatives or vendees, any right to acquire title by use of such scrip to any part of a navigable river, channel, or harbor, or the bed or shore thereof, situated outside the limits subject to survey according to established rules. As part of a general plan and system for the sale and disposition of the lands of the United States, the laws provide for surveys to be made, and officers

specially qualified to do that work and charged with official responsibility are assigned to the duty of subdividing the land and locating and establishing boundaries. The lands surrounding this harbor have been by such officers surveyed, and the boundary line between the land and the water of the bay has been by this official survey located and established. The line is approximately the line of ordinary high tide, which, according to all the laws and usages of this country, is the boundary line dividing the land and the water, and the limit to which the surveys may lawfully extend. The space which the plaintiff seeks to protect is not surveyed as land, and remains unsurveyed because situated outside of this boundary, and it was regarded by the official surveyor as being not land at all, but as water. The work of the surveyors in the field with their plats and field-notes has been approved by the commissioner of the general land-office, and it is, as to all matters relating to the sale and disposition of the lands of the United States, conclusive and binding upon all persons having to deal with the United States, as well as upon the government itself. *Bates* v. *Railroad Co.*, 1 Black, 204. Therefore, in my opinion, the plaintiff could acquire no title or right to the premises he claims by the proceedings in the land-office, and he cannot lawfully maintain this suit. The demurrer will be sustained, and a decree dismissing the bill, with costs, will be entered.