Argued 22 June; decided 11 August, 1899.

## FRENCH LIVE STOCK COMPANY *v.* SPRINGER.

[58 Pac. 102.]

1. PUBLIC SURVEYS—MEANDER LINE AS BOUNDARY.—Where a stream or lake is meandered by public surveys, its shore becomes the real boundary of the abutting fractional lots, and not the meandered line as surveyed, if there is found to be a discrepancy between the two: *Weiss* v. *Oregon Iron & Steel Co.*, 13 Or. 496, and *Barnhart* v. *Ehrhart*, 33 Or. 274, approved.

2. PUBLIC LANDS—ESTOPPEL ON GOVERNMENT.—The fact that the official survey, and the official maps and plats based thereon, showed a body of water at a given place, and that it bounded a certain tract of land, does not estop the government or its grantees from denying the supposed existence of such water

at such location as against riparian purchasers. The government representations must give way to the facts: *Western Invest. Co.* v. *Farmers' Nat. Bank*, 35 Or. 289, cited.

3. DECLARATION BY PLAINTIFF AS EVIDENCE.—Evidence that an officer and stockholder in the plaintiff corporation stated that neither he nor his company owned certain land, and that such statements was one of the inducements for the defendant to enter upon and occupy the land, is admissible upon the issue as to damages in an action to recover the possession of the property.

4. TRIAL—STATEMENT OF EXPECTED ANSWER BY WITNESS.—It is not reversible error to permit counsel, after objection to a question has been sustained, to state to the court in the presence of the jury what the testimony is that he expects to elicit by the question.*

5. RELICTION—EVIDENCE ON CHARACTER OF LAND.—In an action to recover possession of land, where plaintiff, being owner of lots abutting on the meander line of a lake, claims by reliction the land in question outside of such line, and there is a question whether a lake existed in front of these lots, testimony of a witness that he had raised grain on the land outside the meander line, but not in front of plaintiff's lots, is admissible.

From Harney:    MORTON D. CLIFFORD, Judge.

This is an action of ejectment by the French-Glenn Live Stock Company against Alva Springer to recover the possession of one hundred and sixty acres of land, situate in Harney County, Oregon, lying to the north of and adjoining lots numbered 3 and 4 of section 34, and lots numbered 1 and 2 of section 35, township 26 south, range 31 east of the Willamette Meridian, as described on the maps of survey of the said township in the office of the Register and Receiver of the United States Land Office at Burns, Oregon. The cause was tried before a jury, and, the verdict and judgment being for the defendant, the company appeals.

The plaintiff, to support its contention of ownership of the fee, offered in evidence: (1) The official plat of the United States government survey of fractional township 26 south, range 31 east of the Willamette Meridian, showing the township rendered fractional by abutting upon the meander line along the south side of Malheur

---

*NOTE.—On this point see *Coos Bay Nav. Co.* v. *Endicott*, 34 Or. 574.—REPORTER.

Lake, which plat appears to have been approved by the land department of the government, and filed in the local office on September 17, 1877, the plat showing said lots bounded on the north by the meander line of Malheur Lake; (2) the field notes of the survey of the exterior boundaries of said township and its subdivisions, and the meander line of Malheur Lake, under the title heading, "Meanders of the south shore of Malheur Lake, through fractional township 26," etc., and indicating that it was run "with the meander of the lake;" (3) a list of selections of land, made by the agent of the State of Oregon, claimed as swamp and overflowed, with the approval of the Secretary of the Interior, bearing date September 19, 1889; (4) two patents from the United States for said lots 3 and 4, section 34, and 1 and 2, section 35, "according to the official plats of the survey of the said lands returned to the general land office by the Surveyor-General," such patents bearing date March 10, 1890, and October 8, 1891, respectively, and the lots containing, in the aggregate, one hundred and fifty-eight and fifty-three one hundredths acres; (5) two conveyances from the state, comprising the above-described lots, bearing date October 7, 1889, and April 30, 1890, respectively, and other *mesne* conveyances to the plaintiff; and (6) oral evidence tending to prove that in 1877, and for some years thereafter, Malheur Lake was a continuous body of water up to the meander line of that year, that there was a narrow ridge or reef across the west end thereof, some twelve or fifteen miles west of the lands in dispute, which separated its waters from those of Harney Lake, that its waters were from eight to twelve feet higher than those of Harney Lake, that in 1881, the waters of Malheur Lake, overflowing the ridge, cut a channel through, which was enlarged from year to year for some time, that, as a result, its surface

was lowered, the water receding from the flat shelving shore, leaving the disputed land bare, except in the springtime, from and after 1884. This constituted the plaintiff's case.

On behalf of the defendant, evidence was introduced tending to show that there never was a lake in front of the said lots; that Malheur Lake is a well-defined, natural body of water, but that, if the east and west exterior lines of said lots were extended north indefinitely, they would not touch or intersect the margin or border of said lake, but would leave it entirely to the east thereof; that the water of the lake had been, from a time prior to 1877, of about the same height as it was at the date of trial; that the border of the lake never at any time extended to the supposed meander line of 1877, and that there never had been any recession of the water of the lake, and a consequent reliction of land in front of the said lots. The court instructed the jury as follows, to which exceptions were taken and saved by the plaintiff: "I instruct you that the fact that there may have been a meander line along the northern boundary of lots 3 and 4 in section 34, and lots 1 and 2 in section 35, township 26 south, range 31 east, is not conclusive evidence of the existence of a lake. You will therefore weigh and consider all the evidence in this case, and from the whole evidence determine the fact as to whether or not there was in reality a lake north of and adjoining said lots; and, if there was not such lake, you will find for the defendant. * * * I instruct you that, before you can find for plaintiff, you must be satisfied from a preponderance of the evidence that there was a lake immediately north of lots 3 and 4 in section 34 and lots 1 and 2 in section 35. * * * But if you believe from the evidence that there was a swamp or marsh instead of said lake immediately north of and adjoining said lots, then

you will find for the defendant. In other words, it is a fact for you to determine whether or not that was a lake." Other instructions of a like nature were given, but these fairly illustrate the whole. Judgment was entered on the verdict for defendant, and plaintiff appeals.

AFFIRMED.

For appellant there was an oral argument and a brief by *Mr. William Lair Hill*, to this effect:

I. Under a grant by the government, whether state or national, of land described as bounded by the meander line of a meandered body of water, whether such water be navigable or non-navigable, the granted land extends to the actual margin of the water, notwithstanding that the location of the meander line as shown on the survey and plat may not coincide with such actual water line: *Minto* v. *Delaney*, 7 Or. 337; *Weiss* v. *Oregon Iron & Steel Co.*, 13 Or. 496; *Railroad Co.* v. *Schurmeier*, 74 U. S. (7 Wall.) 284; *Hardin* v. *Jordan*, 140 U. S. 371 (11 Sup. Ct. 808); *Jefferis* v. *East Omaha Land Co.*, 134 U. S. 178 (10 Sup. Ct. 518); *Middletown* v. *Pritchard*, 3 Scam. 510 (38 Am. Dec. 112); *Fuller* v. *Dauphin*, 124 Ill. 542 (7 Am. St. Rep. 388); *Clute* v. *Fisher*, 65 Mich. 48 (31 N. W. 614); *Boorman* v. *Sumachs*, 42 Wis. 233; *Ridgeway* v. *Ludlow*, 58 Ind. 248; *Kraut* v. *Crawford*, 18 Iowa, 550 (87 Am. Dec. 414); *Poynter* v. *Chipman*, 8 Utah, 442 (32 Pac. 690).

II. Under such a grant the grantee is entitled to all lands between the original line and the water's edge which shall become bare by accretion or reliction: *Minto* v. *Delaney*, 7 Or. 337; *Mitchell* v. *Smale*, 140 U. S. 406 (11 Sup. Ct. 819); *Hardin* v. *Jordan*, 140 U. S. 371 (11 Sup. Ct. 808); *Fuller* v. *Shedd*, 161 Ill. 462 (52 Am. St. Rep. 380, 33 L. R. A. 146); *Poynter* v. *Chipman*, 8 Utah,

442 (32 Pac. 690);  *Jefferis* v. *East Omaha Land Co.*, 134
U. S. 178 (10 Sup. Ct. 518);  *Banks* v. *Ogden*, 69 U. S.
(2 Wall.) 57.

III.  The official survey of the lake, the approval
thereof, and the official maps and plats made thereunder,
showing the lake and the meander line thereof, conclu-
sively establish the fact and location of the lake, so far as
the rights of riparian grantees are concerned :  *St. Clair
County* v. *Lovingston*, 90 U. S. (23 Wall.) 46;  Gould,
Waters (2 ed.), §§ 76, 85 ;  *Mitchell* v. *Smale*, 140 U. S.
406 (11 Sup. Ct. 819);  *Hardin* v. *Jordan*, 140 U. S. 372
(11 Sup. Ct. 808);  *Mann* v. *Tacoma Land Co.*, 44 Fed.
27 ;  *Knudson* v. *Ormason*, 10 Utah, 124.

For respondent there was a brief and an oral argument
by *Mr. Lionel R. Webster*.

MR. CHIEF JUSTICE WOLVERTON, after stating the facts,
delivered the opinion of the court.

1.  It has become a settled rule of law in this state
that, where a stream is meandered by the public sur-
veys, the stream, and not the meander line, is the true
boundary of the riparian owner :  *Weiss* v. *Oregon Iron &
Steel Co.*, 13 Or, 496 (11 Pac. 255).  The rule is alike
applicable where a lake is meandered by the public sur-
vey.  The shore of the lake becomes the real boundary
of the abutting fractional subdivisions or lots, as they are
termed, and not the meandered line as surveyed, if there
is found to be a discrepancy between the two :  *Hardin* v.
*Jordan,* 140 U. S. 371 (11 Sup. Ct. 808, 838);  *Mitchell* v.
*Smale*, 140 U. S. 406 (11 Sup. Ct. 819, 840).  The reason
which prompted the rule is the difficulty which always
exists in meandering exactly the edge or margin of a
stream, or lake, or other natural body of water, owing to
irregular projections and the various sinuosities of the

water line.   Hence the meander line is supposed to be
run by exclusions and inclusions of such irregularities
of contour, so as to produce an average result, closely
approximating the true and real quantity of upland con-
tained in fractional subdivisions or lots bordering upon
the water front.   It was said by Mr. Justice Clifford
in *Railroad Co.* v. *Schurmeir*, 74 U. S. (7 Wall.) 272:
"Meander lines are run in surveying fractional portions
of the public lands bordering upon navigable rivers, not
as boundaries of the tract, but for the purpose of defining
the sinuosities of the banks of the stream, and as the
means of ascertaining the quantity of the land in the
fraction subject to sale, and which is to be paid for by
the purchaser.   In preparing the official plat from the
field notes, the meander line is represented as the border
line of the stream, and shows, to a demonstration, that
the water course, and not the meander line as actually
run on the land, is the boundary."   As we have seen,
the same rule applies to lakes.   The banks of the stream
and the shores of the lake are constituted monuments
which serve to mark the true boundary, and they should
ordinarily prevail, under the general rule, as against
courses and distances.   Mr. Justice Bradley, in *Mitchell*
v. *Smale*, 140 U. S. 406 (11 Sup. Ct. 819), states the doc-
trine clearly:   "The official plat made from such survey
does not show the meander line, but shows the general
form of the lake deduced therefrom, and the surrounding
fractional lots adjoining and bordering on the same.
The patents, when issued, refer to this plat for identifi-
cation of the lots conveyed, and are equivalent to, and
have the legal effect of, a declaration that they extend to
and are bounded by the lake or stream.   Such lake or
stream itself, as a natural object or monument, is vir-
tually and truly one of the calls of the description or
boundary of the premises conveyed; and all the legal

consequences of such a boundary, in the matter of riparian rights and title to land under water, regularly follow." This doctrine was recognized and adopted in *Barnhart* v. *Ehrhart*, 33 Or. 274 (54 Pac. 195).

It is a question of no moment to the parties in the present controversy whether the shore or upland owner takes to the water's edge or to the center of a non-navigable lake, or what title, if any, has been acquired by reason of such ownership, without reservation in the muniments of title to the land under the water of the lake, as, in any event, the owner is entitled to all land between the original line and the water's edge, which shall have become bare by accretion or a gradual and imperceptible recession of the water, not extending beyond the center of the lake. In this counsel for the parties, as we understand them, concur, so that there is little need of our discussing the question, and we shall do no more than denote briefly the reasons upon which the doctrine rests. The one generally given is that the owner is subject to the loss of soil by the encroachment of the water; hence, that he should have the benefit of accretions on account of its recession, and thus, upon a general average, the gain will balance the loss, and *vice versa*. The maxim, "*De minimis non-curat lex*," is also applied. Another, and perhaps a more cogent one, invoked is that it preserves the fundamental riparian rights, which often constitute the principal value of the land, of access to the water. These principles find support in the following authorities : *Minto* v. *Delaney*, 7 Or. 337 ; *Hardin* v. *Jordan*, 140 U. S. 372 (11 Sup. Ct. 808) ; *Mitchell* v. *Smale*, 140 U. S. 406 ( 11 Sup. Ct. 819) ; *Fuller* v. *Shedd*, 161 Ill. 462 (33 L. R. A. 146, 52 Am. St. Rep. 380, 44 N. E. 286) ; *Poynter* v. *Chipman*, 8 Utah, 442 (32 Pac. 690) ; *Jefferis* v. *East Omaha Land Co.*, 134 U. S.

178 (10 Sup. Ct. 518); *Lamprey* v. *State*, 52 Minn. 181 (38 Am. St. Rep. 541, 18 L. R. A. 670, 53 N. W. 1139).

2.   The real question of cardinal and pivotal concern arises upon the urgent and strong contention and argument of counsel for plaintiff that the official survey of the lake, the approval thereof, and the official plats and maps made thereunder, showing the lake, and the meander line thereof, conclusively establish the fact and location of the lake, so far as the rights of riparian grantees are concerned; and the government and its grantees are estopped to deny the supposed fact as represented to the purchasers of abutting land :    *Mann* v. *Tacoma Land Co.*, 44 Fed. 27, supports this contention in its fullest signification; and *Mitchell* v. *Smale*, 140 U. S. 406 (11 Sup. Ct. 419), may be said to sustain it.   Defendant's counsel denies that any hard and fast rule of the kind exists, but asserts that, even if it does, it can have no application in the present controversy, for two reasons : One, that the abutting or upland, represented by the lots to which plaintiff deraigns title from the government, was swamp and overflowed land; that the title, under the patent from the government, took effect, by relation, as of March 12, 1860, the date when the swamp-land act of Arkansas was extended to Oregon; that, the public survey having been made in 1877, subsequent to the passing of the title out of the government, there could have been no representation by the general government prior to sale that it bordered the lake or other natural body of water; hence estoppel could not apply.   In this connection the idea is also advanced that the grantee of swamp and overflowed lands takes only such as is of that special character, and that the land under the water, forming the bed of the lake, not being of that character, could not pass in any event; in other words, that the limit of the swamp must necessarily be the limit of the grant.   The other is that

there never existed a lake in front of or bordering upon the plaintiff's lots ; that the question of fact involved is not one of accretion or recession of the water, and consequent reliction, but of the existence of the lake upon which plaintiff anchors its claim ; that this question was submitted to the jury, and, as the verdict was against the plaintiff, it is now precluded.   We will not now attempt to determine whether the first reason assigned is sound or not, or whether any rule of law exists, based upon and in consonance with it, as it is not deemed necessary to a decision of the controversy.

The second reason, however, we deem quite sufficient and ample for affirming the judgment below.   If there never was a lake in front of plaintiff's lots, or if one did exist there at the time of the survey, then there was no natural object or monument marking the north boundary of said lots ;  hence, resort must be had to the secondary evidence, viz., the courses and distances, which are ascertainable from the plats and surveys, and they must prevail.   The result is natural, and the land conveyed would be just what a mathematical calculation would produce from the field notes of the survey of the fractional sections and the supposed meander line.   We are not without authority for this view :   *Grant* v. *Hemphill*, 92 Iowa, 218 (59 N. W. 263), is a case very much to the purpose. That was tried in a court of equity, and the facts were found by the court.   ROTHROCK, J., who wrote the opinion in the supreme court, says :   "It appears from a very decided preponderance of the evidence that the land in controversy is not now, and probably never was, any part of a lake.   It is true that some of the witnesses testify that the inlet of Mud Lake extended up into the land. But there is no evidence that at or near the time of the survey or since there has been any body of water any-

where on the land upon which to base a meandered line. Some of the land, like all bodies of land in that country, is low, flat, and marsh land ; but the evidence shows that a greater part of the land claimed by Eaton is dry, tillable land, and that, if it had been surveyed, it would not have passed to the state under the swamp-land grant. * * * A riparian proprietor is one who owns land bounded upon a water course or lake. The evidence in this case shows that there was not at the time of the government survey, and is not now, any body of water east of the meandered line, on which to found any valid claim of land outside of the line, by accretion or reliction, or in any other manner. In the large mass of authorities collected and cited by counsel, we find no case which can be said to sustain a claim made upon any such a state of facts.'' We have had occasion to cite that case before, with approval of the doctrine there enunciated : *Western Invest. Co.* v. *Farmers' Nat. Bank,* 35 Or. 289 (57 Pac. 912). Now, the plaintiff sought to sustain the fact of the actual existence of the lake in front of its lots, and upon which they abutted at the time of the survey, and then to show a gradual subsidence of the water of the lake, due to the cutting of the channel, from natural causes, through a narrow reef or ridge extending across between Malheur and Harney lakes, by which the water of the former was drawn off into the latter, and a consequent reliction of the land bordering said lots, which constitute the land in dispute and to which plaintiff claims title.

The defendant controverted this position, and sought and introduced evidence tending to show the nonexistence of such a lake at the time of the survey, and at all times since ; in short, there was support for the whole of his contention. The fact of the existence of Malheur Lake, a non-navigable body of water, was admitted, but

there was evidence to show that it lies to the northeast of the lots of plaintiff, and that no part of it now or at the time of the survey extended westward in front or to the north of them.    Several witnesses testified, in effect, that there was no open body of water of any moment in front of the lots ; that the land was low and flat ; that a portion of it was of a marshy or swampy character ; but much of it—perhaps the greater portion—was dry, and not covered with water, except at certain seasons of the year, when the water was unusually high, and that it was the same character of some of the land that is comprised within the boundaries of said lots, and that this condition of affairs has existed since prior to the survey of 1877.    Many circumstances were related tending to support the truth of the testimony.    The issues of fact were clear and distinct, and, having been submitted to the jury, there is no reason why their verdict should not preclude the plaintiff, as in other cases where a jury has passed upon a submitted question of fact.    If it be said that the result is a collateral impeachment of the government survey, the answer is decisive that the government ought not to be precluded by a meander line which does not approximately and by general average border the banks of the stream or the shores of the lake which it is the purpose of a public survey to meander.    If there was no lake to meander, the purchaser could not have bought upon the representation of the government that there was, and cannot become a riparian owner, and, therefore, can claim none of the rights appurtenant thereto.    So, turn the matter which way we will, the facts do not present a case which, under the usual reasons assigned, will preclude the government or its grantees.    The result, that the plaintiff should acquire by the purchase of these lots several multiples of their area, as was remarked by Mr. Justice BREWER

in his dissenting opinion in *Mitchell* v. *Smale*, 140 U. S. 406 ( 11 Sup. Ct. 819 ), is "certainly suggestive," and the case ought to be a clear one to support and sustain it. The instructions to the jury were in accord with the views here entertained, and hence there was no error in giving them.

3.    There was evidence introduced, over the objection of the plaintiff, touching the declaration of Peter-French, an officer and stockholder in the plaintiff corporation, to the effect that he or the company did not own the land in front of the lots, and that this was one of the inducements for the defendant to enter upon and occupy it. It is claimed that this was admitted under the allegations of the answer, by which it was sought to estop the plaintiff to claim the land ; that the answer was entirely insufficient for that purpose, and hence that the evidence was wholly irrelevant, and therefore hurtful. Whatever may have been the issue in that regard, there was a claim for damages, and the evidence had a material bearing upon that question ; hence there was no error in the premises.

4.    During the course of the presentation of the defendant's case the plaintiff objected to a certain interrogatory propounded to one of his witnesses, and, the objection being sustained, defendant's counsel was permitted to state to the court, in the presence of the jury, what the testimony was that he expected to elicit by the question ; and this was assigned as error. It is usual in the trial of causes, where a party is desirous of introducing testimony, and is overruled when the question is asked touching it, for counsel to state to the court what he expects to prove by the witness ; and this he does for the purpose of saving the proper exception, and making his point clear to the appellate court. A statement of

that character, in the presence of the jury, has never been held, as we are aware, to constitute reversible error.

5.   One of defendant's witnesses was permitted to testify touching the fact that he had raised grain upon the land situate to the north of the meander line, but not in front of the plaintiff's lots ; and this is assigned as error.   The pivotal question before the jury, as we have seen, was whether a lake existed in front of these lots, and this testimony was pertinent to that issue, and there was, therefore, no error in permitting it to go to the jury.   These considerations affirm the judgment of the court below, and it is so ordered.          AFFIRMED.