## Case No. 6,508.

### HILLS v. HOMTON et al.

### [4 Sawy. 195.][1]

Circuit Court, D. California. Feb. 19, 1877.

MEANDERING STREAM — CONSTRUCTION OF PATENT — JURISDICTION OF NATIONAL COURTS.

1. Where the line as described in a patent goes to a station in the center of a creek; thence "meandering down the creek" upon a specified course for a designated distance to a station; thence on courses and distances from station to station along the general course of the creek; but actually crossing and recrossing several times for a number of courses to a designated station; "thence leaving the creek," etc., the creek through all its sinuosities will be regarded as the line intended, although it does not, through its entire course, correspond to the straight lines run in exact accordance with the courses and distances.

[Cited in Weiss v. Oregon Iron & Steel Co., 13 Or. 496, 11 Pac. 255.]

2. Where, in an action, the title to land in controversy held under patents issued upon confirmed Mexican grants, depends upon a controverted construction of the patents, the national courts have jurisdiction under the act of congress of March 3, 1875 [18 Stat. 470].

[This was a bill in equity by Miles Hills against James Homton and others.]

Wm. Matthews, for plaintiff.
John Reynolds, for defendants.

SAWYER, Circuit Judge. The plaintiff claims the land in controversy under the patent to the Los Vergeles Rancho, and the defendant, under the patent to the Rancho La Natividad. The line on the sides where the locus in quo is situated is common to both ranchos, being the dividing line between them. The only question is as to its location.

If the Gavilan creek, in all its meanderings, is the true line, the land is within the Rancho Los Vergeles, and belongs to plaintiff. If the line is to strictly follow the courses and distances in the general course of the Gavilan creek, without regard to its meanderings, a portion at least is within the La Natividad Rancho, and belongs to defendant.

The twelfth course, as stated in the Los Vergeles patent, goes to "the center of the creek station; thence (thirteenth course) north eight degrees and forty-five minutes west, meandering down Gavilan creek twenty-eight chains to station; thence north three degrees west, thirteen chains to station," and

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

12 FED. CAS.—13

so on, the courses and distances being described in language similar to that of the last (thirteenth) course to the twenty-eighth course, which is: "Thence north fourteen degrees west, leaves the creek," etc. The line so described between the thirteenth and twenty-eighth stations crosses and recrosses the creek several times. The patent to La Natividad Rancho starts at a different point, comes round on the south and strikes Gavilan creek at station four, several stations higher up the creek than station thirteen on the Los Vergeles Rancho, the conclusion of the description of the third course and distance being "to the center of the Gavilan Creek station." The description then proceeds: "Thence meandering down the same north forty-seven degrees and thirty minutes west, twelve chains to station; thence north sixty-eight degrees west, ten chains and forty-four links to station," and so on in language similar to the last course and distance to the twelfth, which concludes "to course number thirteen of the Los Vergeles Rancho," etc. * * * "thence along the boundary line of Rancho Los Vergeles," etc., giving the same description as before stated in regard to the Los Vergeles patent from course thirteen to course twenty-eight, where the patent in this, as in the other case, says: "Thence leaving the creek," etc. In the plats annexed to both patents there are two lines drawn, representing the creek from station thirteen to twenty-eight in the Los Vergeles, and from station four to twenty-eight in the La Natividad patent, and the line drawn from courses and distances on both plats is drawn within the two lines representing the shore lines of the creek; thus showing that the surveyor-general designed to represent the lines as following the center of the creek. The plats form parts of the descriptions of the patents, and it is reasonable to suppose that if the surveyor-general had intended the line by courses and distance to be the exact line of the respective ranchos, he would have indicated in these plats the departures from the line of the creek, where there were any, in running from station to station along the general course of the stream. It is claimed by defendant that the words, "meandering down Gavilan creek," from station thirteen in the Los Vergeles, and station four in the La Natividad patents, where the respective surveys first strike the creek, have reference only to that single course, as they are not used in the other courses. But it would have been exceedingly awkward to repeat these words in each course. It seems to me that the surveyor-general simply intended to indicate that from the time the line commenced to follow the creek, it followed its meanderings until he indicated otherwise, which he did do when he came to leave the general course of the creek at station twenty-eight, where he says: "thence * * * leaves the creek," in one, and "thence leaving the creek," in the other; showing that the sur-

veyor-general intended to declare that he meandered the creek from the point where he first struck it, and continued meandering till he left it.

In the case of Quicksilver Min. Co. v. Hicks [Case No. 11,508], in this court, a similar question arose, in which Mr. Justice Field, who tried the case, says: "The patent to Fossat, in describing the land confirmed to him, gives the boundary line on one side as running to the center of Capitancellos creek, and 'thence meandering down the center of the same one chain and ninety links to station; thence north seventy-four degrees fifteen minutes west, five chains to station,' and so on from station to station, according to various courses and distances, to a point where the line leaves the creek. The several stations designated are on the bank of the creek and between the line drawn from one to the other and the creek lies the narrow strip of land in controversy. The defendant contends that the line drawn from station to station constitutes the boundary. The plaintiff, on the other hand, insists that the creek is the boundary, and that the courses between the stations only indicate the general direction of the stream, and that the stations are points fixed by the surveyor to enable him to compute the extent of land lying between the creek and the other boundaries. This latter view is undoubtedly correct. The language stating that the line meanders down the center of the stream settles the point. The stations could not, of course, be placed in the stream; nor could the estimate of the area in the tract confirmed be made from a tortuous line following the sinuosities of the creek. Of necessity, then, the stations had to be fixed on the bank, and they were fixed more or less distant from the creek, according to the condition of the bank at the points selected."

That case is precisely like the one in hand, and must control the decision. See, also, Cockrell v. McQuinn. 4 T. B. Mon. 61; Bruce v. Taylor, 2 J. J. Marsh. 161; McCullock v. Aten, 2 Ohio, 308; Lamb v. Rickets. 11 Ohio, 314; Brown v. Huger, 21 How. [62 U. S.] 306; Mayhew v. Norton, 17 Pick. 357; French v. Bankhead, 11 Grat. 136.

The Gavilan creek, as it existed at the time of the survey in September, 1858, from stations thirteen to twenty-eight, as shown by the patent and plat thereto annexed, to the Rancho Los Vergeles, must be held to be the dividing line between these two ranchos. The main controversy between the parties is upon the construction of their respective patents. The court, therefore, has jurisdiction under the act of congress of March 3, 1875.

The rental value is $30 per month. There must be a finding and judgment for plaintiff as to all that part of the premises described in the complaint lying northerly and easterly of the Gavilan creek, as it existed in the month of September, 1858, and for the mesne profits, at the rate of $30 per month, from July 15, 1875, till the present time, and it is so ordered.