[Filed June 9, 1886.]

## PETER A. WEISS *v.* OREGON IRON AND STEEL COMPANY.

RIPARIAN RIGHTS—WATERCOURSE—BOUNDARIES.—Where a stream is meandered in the public surveys, the stream, and not the meander lines, is the true boundary of the riparian proprietor.

SAME.—Every riparian proprietor is entitled to the use of the flow of the water in its natural course, and to the momentum of its fall on his own land. He has no property in the water itself, but a simple usufruct.

SAME—USE OF WATER.—Such use must be reasonably exercised so as not to cause a substantial diminution or waste, and may be for any legal purpose, provided the water is returned to its channel uncorrupted and without essential diminution.

SAME—REASONABLE USE A QUESTION OF FACT.—What is a reasonable use is a question of degree, in which the size and capacity of the stream is to be considered.

SAME—MANUFACTURER.—A manufacturer has no right to divert the waters of a stream and discharge them into a different channel without the consent of the lower proprietors on the stream, however beneficial his enterprise may be to the public. The necessities of his business cannot be made the standard of another's rights in a thing which belongs to both.

SAME—EQUITY—INJUNCTION.—A riparian proprietor, owning to the center of a stream, is entitled to the aid of equity to prevent a diversion of the waters from their natural channel, and this notwithstanding that he does not himself use the water-power, and has sustained but small pecuniary damage.

CLACKAMAS COUNTY. Defendant appeals. Affirmed.

*George H. Williams,* for Appellant.

*J. K. Kelly,* for Respondent.

LORD, J. This is a suit to enjoin the defendant from diverting the water of the Tualatin River into Snake Lake for manufacturing purposes. The plaintiff alleges that he is the owner of the land abutting upon the Tualatin River, which is its southern boundary for about three fourths of a mile from its confluence with the Willamette River, and is therefore the owner of one half the

bed of said river, and entitled to have the waters thereof to flow in their accustomed channel. The defendant denies this, and contends that the official survey and the patent to the plaintiff do not include nor establish the claim of the plaintiff. Upon this point, we think the evidence disposes of all doubt or uncertainty.

The law is now considered well settled that where a stream is meandered in the public surveys, the stream, and not the meander lines, is the true boundary of the riparian owner. (*R. R. Co.* v. *Schurmeir,* 7 Wall. 284–286; *Minto* v. *Delaney,* 7 Or. 342; *Hills* v. *Horton,* 4 Saw. 195; *Q. M. Co.* v. *Hicks,* Id. 688.) The official survey of Weiss's claim designates the Tualatin River as the northern boundary of it, and also describes it by courses and distances, and in such case, the river, being a natural boundary, must prevail. "Where permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount." (Code, sec. 845, subd. 2; *Lewis* v. *Lewis,* 4 Or. 179.)

In *Goodman* v. *Myrick,* 5 Or. 65, it was held that in the government surveys the line actually used by the original surveyors is the true line. The testimony of D. P. Thompson, who was engaged in the government survey, establishes the fact that the northern boundary of claim 49 was actually run down the right bank of Tualatin River, "taking measurements across the stream so as to follow the middle of it." And in reply to the question, "What was the northern boundary of Weiss's claim from the north-west to the north-east corner, as surveyed by you?" his answer was: "The middle of the Tualatin River." And this is consistent with and corroborated by the field-notes and other evidence produced. Upon this evidence, we do not think the title of the plaintiff, as alleged, is doubtful or difficult of ascertainment, or in

OREG. XIII.—32

fact, as contested upon any ground by the evidence on which he puts it. This result obviates the necessity of considering the second point suggested, and leads us directly to the main point discussed and to be decided.

The facts show that one fifth, or perhaps more, of the water of the stream is diverted from its natural course, and turned away from the other riparian owners. It differs essentially from a case in which a stream is diverted for manufacturing purposes, and the excess of water not actually consumed in such use is restored to its natural channel. In a word, it is a case of a diversion of a part of a watercourse, not for ordinary purposes, but for manufacturing purposes, without restoring to the channel the surplus of water not actually used. The general doctrine relating to watercourses is, that every proprietor is entitled to the use of the flow of the water in its natural course, and to the momentum of its fall on his own land. The owner has no property in the water itself, but a simple usufruct. He may use it as it passes along, but he must send down to his neighbor below as much as he receives from his neighbor above. (Angell on Watercourses, secs. 90, 94.) "As a general proposition, every riparian proprietor has a natural and equal right to the use of the water in the stream adjacent to his land, without diminution or alteration." (Washburn on Easements, 319.) "Riparian proprietors are entitled, in the absence of grant, license, or prescription limiting their rights, to have the stream which washes their lands flow as it is wont by nature, without material diminution or alteration." (Gould on Waters, sec. 204.) Chancellor Kent says: "Though he may use the water while it runs over his land, he cannot unreasonably detain it, or give it another direction, and he must return it to its ordinary channel when it leaves his estate. Without the consent of the adjoining proprietors, he cannot divert or diminish

the quantity of water which would otherwise descend to the proprietors below." (3 Kent's Com., sec. 439.) *"Aqua currit et debet currere ut currere solebat,"* is the language of the ancient common law. The right to a watercourse begins *ex jure naturæ,* and having taken a certain course naturally, it cannot be diverted to the deprivation of the *rights* of the riparian owners below. This is the language of all the common-law text-books, and the decisions. (Angell on Watercourses, sec. 93.) "It is an ancient and well-established principle," said Weston, J., "that water cannot be lawfully diverted, unless it is returned again to its accustomed channel, before it passes the land of the proprietor below. Running water is not susceptible of an appropriation which will justify the diversion or unreasonable detention of it." (*Blanchard* v. *Baker,* 8 Greenl. 266.) "The general rule of law is, that every man has a right to have the advantage of a flow of water in his own land, without diminution or alteration." (Lord Ellenborough in *Bealy* v. *Shaw,* 6 East. 208, 214.)

By settled principles of both the civil and common law, the riparian owner has a usufruct in the stream as it passes over his land, of which he cannot be deprived by mere diversion. (*Pope* v. *Kinman,* 54 Cal. 3.) As a result of the American and English cases, the common-law doctrine is thus summed up in the editorial note to *Heath* v. *Williams,* 25 Me. 209, S. C., 43 Am. Dec. 275: "The general principle is, that every owner of land through which a natural stream of water flows has a usufruct in the stream as it passes along, and has an equal right with those above and below him to the natural flow of the water in its accustomed channel, without unreasonable detention or substantial diminution in quantity or quality, and none can make any use of it prejudicial to the other owners, unless he has acquired a right to do so by license, grant, or prescription."

The defendant, as riparian owner, has a right to the use of the stream for its own necessary uses, but this right must be reasonably exercised, and there must be no substantial diminution or waste.  It is entitled to use only so much of the stream as will not materially diminish its quantity, and it may use it for any legal purpose provided it returns the stream to its channel uncorrupted and without any essential diminution.   Such uses of a stream by riparian owners is to some extent a question of degree; and in all such cases the size and capacity of the stream is to be considered.   The amount taken from a large running stream which would cause no sensible or practical diminution of its benefits to a lower proprietor would, if taken from a small stream, materially diminish its quantity and work a manifest injury.   What is a reasonable use must necessarily depend upon the facts, considering the size of the stream and the amount appropriated.   But all the authorities concur that when the amount abstracted perceptibly or materially diminishes the quantity of the stream, such use of it by a riparian owner is unreasonable, and an infringement of the rights of other riparian owners, for which the law furnishes redress.   The plaintiff is entitled to have the natural flow of the water in its accustomed channel, subject only to the diminution and retardation incident to a reasonable use.   Whatever goes beyond this is an infringement of his rights in the stream which may form the basis of a presumption of a grant by lapse of time, and necessarily imports damages, and entitles him to the protection of the law.  (*Plumleigh* v. *Dawson*, 1 Gilm. 544.)   And Mr. Angell says: "That a diversion of a watercourse, without actual injury to a riparian owner lower down the stream, legally imports damages (because it is an infringement of a right), is a doctrine powerfully sustained by American authorities."   (Angell on Water-

courses, sec. 135.)   Now, the counsel for the defendant, while admitting that the rule of the common law as to riparian owners is fatal to the claim of the defendant upon the facts, insists that the rule itself needs to be liberalized, and that the case presented is a forcible illustration of the hardship and injustice of its operation, and of the duty of the court to so extend or liberalize it as to protect the defendant from the burdens and unjust exactions which must be the consequences of its strict application.   His argument in effect is, that the amount of water abstracted and diverted is necessary to carry on the defendant's business, which is a laudable enterprise that deserves, on account of the supposed benefits to accrue from its successful establishment, to be encouraged and protected, and that such use of the water, although it may sensibly diminish the supply of the stream, will leave a sufficient quantity to flow in its accustomed channel for all present and prospective purposes to which the plaintiff can apply it.   But as Black, J., said in *Wheatly* v. *Chrisman:* "The necessities of one man's business cannot be the standard of another's rights in a thing which belongs to both.   The defendant had a right to such use as he could make of the water without materially diminishing it in quantity. . . . . If he needed more, he was bound to buy it.   However laudable his enterprise may be, he cannot carry it on at the expense of his neighbor.   One who desires to work a lead mine may require land and money as well as water, but he cannot have either unless he first makes it his own." (24 Pa. St. 302.)

And in a late case in the same court, the doctrine of the law as laid down in *Wheatly* v. *Chrisman, supra,* was approved and confirmed, the court saying: "When the upper riparian owner diverts or uses the water, not for ordinary domestic purposes or uses, such as are insepa-

rable and necessary to the use of his land, but for manufacturing and other purposes, the case is different." (*Penn. R. R. Co.* v. *Miller,* The Reporter, 1886.) In such case, the right to the use of the water must be reasonably exercised, and with proper regard for the equal rights of the other proprietors. Of course, every use of the water of a stream involves some diminution, and as Story, J., said, to hold that there can be no diminution whatever by a riparian proprietor in the use of the water as it flows, would be to deny any valuable use of it. There may be, and there must be, allowed of that which is common to all a reasonable use by each. (*Tyler* v. *Wilkenson,* 4 Mason, 401.) And here, if the appellants, after diverting the quantity required for the purpose of propelling the mill, returned the surplus, not consumed by such use, to the channel of the stream, a different case would be presented. In that event, it might turn out that the amount abstracted did not materially diminish the quantity of the stream, and the right to the use of the water being thus reasonably exercised, it could not be said to be wrongful or injurious to the plaintiff or other proprietor. But the diversion of a watercourse, or a part of it, by an upper riparian proprietor for manufacturing purposes, without restoring to the channel the excess of water not actually consumed, is never allowed.

That cannot be considered a reasonable exercise of the right to use the water of a stream which involves its substantial diminution and waste. "Whether or not a *diversion* of water is reasonable," said Harris, J., "is a question not so much as mentioned by any writer or judge. The very proposition assumes the right of the proprietor above to use the water for his own purposes, to the exclusion of the proprietors below—a proposition inconsistent with the doctrine universally admitted, as we have seen, that all proprietors have the same rights."

(*Van Heesen* v. *Coventry*, 10 Barb. 522.)   We do not think the contention of counsel for the defendant can be maintained upon principle or authority.

Nor do we think the objection to the exercise of the jurisdiction well taken.   Mr. High says: "A riparian proprietor owning to the center of a stream is entitled to the aid of equity to prevent a diversion of the waters from their natural channel.   Nor does the neglect of complainants to use or appropriate the water-power, or the fact that they have as yet sustained but small pecuniary damage, or that defendants would be subjected to heavy expense if compelled to restore the water to its original channel, present such objections as would warrant a court of equity in refusing the relief."   (High on Injunctions, sec. 795, and authorities cited.)

The decree must be affirmed.