Argued March 10; decided 31 March, 1902.

## JOHNSON *v.* TOMLINSON.

[68 Pac. 406.[

JURISDICTION OF EQUITY.

1. In a suit in form to quiet title, plaintiff, who was a riparian owner, alleged that there was between the meander line and the line of high water a strip of land not in possession of another, and to which, as riparian owner, he had title. The answer alleged that the meander line and the line of ordinary high water coincided, and defendant claimed the land between high and low-water marks. *Held,* that, the dispute not being one as to the location of a boundary, but as to whether there was any upland between the meander line and the line of high water, a contention that the controversy was as to the true location of a boundary line, and triable at law, was without merit.

RIPARIAN BOUNDARY ON MEANDERED STREAM.

2. Where a stream is intended to be meandered by public surveys, the stream, and not the actual meander line as run on the ground, is the true boundary of the riparian owner: *French Live Stock Co.* v. *Springer,* 35 Or. 312, cited.

EVIDENCE AS TO COINCIDENCE OF MEANDER AND HIGH-WATER LINES,

3. On an issue whether the ordinary highwater line of a stream and the meander line as run on the ground coincided, *held,* that the evidence showed a body of land between the meander line and the line of ordinary high water.

From Tillamook: REUBEN P. BOISE, Judge.

This is a suit to quiet title to a strip of land, containing about three quarters of an acre, lying between the government meander line and the line of ordinary high water in Tillamook and Trask rivers, both of which are tidal streams. A part of lot 10, section 26, township 1 south, range 10 west, as surveyed by the United States, is a peninsula, bounded on the east by the Trask, and on the south and west by the Tillamook River. The plaintiff owns a part of the southern point of the peninsula thus formed, and contends that a small strip of upland between the original meander line and the two rivers belongs to him. In his complaint he alleges that he "claims to be the owner in fee" of that portion of the lot which lies between the meander line and the line of ordinary high water, particularly describing the same by metes and bounds; that it is not in the possession of another; that the defendant, without right, claims some interest or estate therein adverse to the plaintiff,— and prays for a decree adjudging such claim to be without

merit and quieting his title. The answer denies that defendant's claim to the land described in the complaint is without right, or that he has no estate or interest therein, or that any portion of lot 10 lies between the meander line and·the line of ordinary ·high water; alleges that the meander line is the western and southern boundary of the lot, and is the line of actual high water in Tillamook and Trask rivers; that the lands lying between the meander and the low-water line are tide and shore lands, and as such were in January, 1883, conveyed by the state to one Squires, through whom defendant deraigns title; that the defendant is in actual possession and occupation of all of such lands, as owner in fee, and has been in adverse possession during all of the sixteen years last past,—and prays for a decree quieting his title, and adjudging that plaintiff has no interest or estate therein. A reply was filed, and upon the issues joined the suit was tried, resulting in a decree in favor of the plaintiff, from which the defendant appeals.

For appellant there was a brief over the name of *Handley & Handley,* with an oral argument by *Mr. Thos. H. Handley.*

For respondent there was a brief and an oral argument by *Mr. B. L. Eddy.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

1. The defendant insists that the only controversy in the case is as to the true location of the boundary of lot 10, and defendant's adverse possession to the property in dispute, and that both of these questions are purely legal, and should be tried at law. But we do not so construe the pleadings. The suit, in form and substance, is one to quiet title. The plaintiff alleges, in effect, that there is a strip of upland, not in possession of another, between the meander line and the line of ordinary high water, and that he is the owner thereof. The answer denies plaintiff's ownership of such strip of land, and sets up a claim in fee to all the land up to the meander line as actually

established by the government survey. In other words, the plaintiff, by his pleadings, asserts title in the upland to the line of ordinary high water, notwithstanding the fact that the United States meander line does not coincide therewith, but is some distance back from the stream, while the defendant alleges that the meander line and the line of ordinary high water coincide, but in any event he has title by virtue of a conveyance from the state to all the land up to the actual meander line. The dispute, therefore, is not as to the location of the boundary, but as to whether there is any upland between the meander line and the line of ordinary high water, and, if so, as to whom it belongs.

2. Under the law, as settled in this state, where a stream is intended to be meandered by public surveys, the stream, and not the actual meander line as run on the ground, is the true boundary of the riparian owner: *Minto* v. *Delaney,* 7 Or. 337; *Weiss* v. *Oregon I. & Steel Co.* 13 Or. 496 (11 Pac. 255); *French Live Stock Co.* v. *Springer,* 35 Or. 312 (58 Pac. 102). It is stipulated and agreed that plaintiff is the owner of a certain described portion of lot 10, and, as a consequence, it necessarily follows from the rule stated that his title is not confined to the meander line, but extends to the stream, and includes all of the upland, if any, between the meander line and the line of ordinary high water. It is only important, then, to ascertain whether there is any such upland, and this is a question of fact, to be determined from the testimony.

3. Mr. Austin, county surveyor, who in March, 1899, at the request of the plaintiff, surveyed or attempted to survey the tract of land in controversy, testifies that he is acquainted with the location of the meander line as actually run on the ground, and that between such line and ordinary high water there is a strip of land, not covered by ordinary tides, which produces grass and other vegetation such as usually grows on the land above high water in that vicinity. Mr. Stillwell, who testifies that he has known the land in controversy for twelve or fourteen years, and was one of the chain carriers who assisted Austin in making his survey, says that the line run by

Austin for ordinary high-water mark is some distance outside
of the meander line, and the land between the two lines
is covered with grass, similar to that grown on high lands;
that it is not reached by the ordinary tide, although covered
when freshets and extraordinary tides are combined.    Mr.
Davies, who operates a sawmill near the land in controversy,
and has known it for four years, testifies to substantially the
same state of facts.    The witness Olds says that he had known
the land for fifteen years, and lived on it for some time; that he
does not remember of the tides ever being over a part of the
land in controversy; that it was covered with vegetation, and
he had it fenced and used it for pasture; that red top and red
clover, and other grasses such as are grown only above high
water, were raised on the land.    This witness and James Wil-
son both testify that they were acquainted with Squires, the
predecessor of the defendant, and that he (Squires) pointed
out to them the line of his tide land, and, as so pointed out, it
did not include any of the grass land or land in dispute.    The
plaintiff testifies that he built a salt house on the land in con-
troversy about three years ago, and a small cabin about six
years ago, and that it is only at new and full moon tides and
during storms that the land is overflowed; that an ordinary
tide does not come up onto the land, and that it is covered with
velvet grass, red clover, and some wild grasses, and a mowing
machine could be run over it.    From this testimony, which is
not substantially contradicted by the defendant, it is quite
clear that there is a body of upland lying between the meander
and actual line as run by the government and the line of ordi-
nary high water, which, under the authorities cited, belongs
to the plaintiff.

Both brief and argument have placed much stress upon the
question of the accuracy of the description of the land as set
out in the complaint and decree of the court below, but we do
not regard that question as at all material at this time.    As al-
ready suggested, this is not a suit to establish the boundary
between plaintiff's upland and defendant's tide land, and the
decree of the court below is so framed as to limit plaintiff's

title "to line of ordinary high water." The courses and distances, as given in the decree, are controlled at each step by this phrase, and therefore any error therein is immaterial. The decree settles the contention between the parties, as made by the pleadings, by determining (and, we think, rightfully) that the plaintiff owns to the line of ordinary high water. This is all that can be gathered from a careful reading of it, and all that is involved in this suit. The defendant's adverse possession, as set up in the answer, was not insisted upon at the hearing. Indeed, there is no evidence in the record showing or tending to show that defendant ever had or claimed possession of any land above the line of ordinary high water. From these views it follows that the decree of the court below should be affirmed, and it is so ordered.          AFFIRMED.