Argued 14 February, decided 9 April, 1907.

### SEABROOK *v.* COOS BAY ICE CO.

89 Pac. 417.

BOUNDARIES—NATURE OF SURVEYOR'S EVIDENCE.

1. In testifying as to the location of points in public surveys, it must be remembered that surveyors are only witnesses, and they should confine their testimony to what acts they performed, leaving the conclusion as to the location of the point to the jury, and the court can determine, as a matter of law, whether they have pursued the correct method in the survey.

BOUNDARIES—MANNER OF LOCATING CORNERS.

2. Where, on an issue as to the location, on the ground of the boundaries of a tract of tide lands, the description in the deed called for a place of beginning a certain number of chains northward from a "post at angle in meander line" and it was then stated that the post was a certain num-

ber of chains north from a certain corner of "lot No. 2 in section 26," etc., the proper method was to find the angle post, and, if lost or obliterated, to find it from some known corner and not to fix a starting point according to the number of chains mentioned from the corner of the lot.

BOUNDARIES—CALLS CONTROL MEANDER LINE.

3. A deed of tide land by the state described by metes and bounds conveys the territory within the calls, which are not controlled by the meander lines of the original United States survey, though one of the calls is "thence along the meander line," it being presumed that the line thus referred to means the actual high water mark, rather than the line of the government survey.

BOUNDARIES—PURPOSE OF MEANDER LINES.

4. In surveying fractions of government land adjoining navigable waters, the meander line is not intended to mark tne boundary, but only to indicate the winding lines of the banks.

ADVERSE POSSESSION—SUFFICIENCY OF EVIDENCE.

5. Adverse possession of tide land improved only by some scattered piling is not established by the payment of taxes, and the occasional receipt of rent for tying scows and other floating craft to the piling.

MAPS AS EVIDENCE.

6. A map made from miscellaneous sources of information, without an actual survey on the ground, is not competetnt evidence of the location of objects or of the distances shown thereon.

From Coos: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE EAKIN.

This is an action of ejectment by E. B. Seabrook against the Coos Bay Ice & Cold Storage Co. Plaintiff's grantor, Charles E. Fox, on November 25, 1874, purchased from the state tide lands described in his deed as:

"Beginning at the meander post on the line between sections 26 and 27, Tp. 25 S., R. 13 W., Will. Mer., and running along the meander line S. 58° E., 22.30 chs.; S. 51° E., 10 chs.; S. 9° E., 1.74 chs.; thence east, 4.50 chs., to low-water line; thence along low-water line, N. 9°· W., 1.74 chs.; N. 51° W., 10 chs.; N. 45° W., 20 chs.; thence west, 8.50 chs., to place of beginning."

And on April 10, 1873, the state conveyed to G. Webster certain tide lands described as:

"Beginning 2.21 chains northward from a post at angle in meander line of Coos Bay—said post being 7.50 chains, N. 17" E. from the N. E. corner of lot No. 2 in section 26, Tp. 25 S., R. 13 W., Will. Mer., and running northward along the meander line 16.75 chains; thence east 4.50 chains to low-water mark;

thence southward, along low-water line, 16.75 chains; thence west 4.50 chains, to place of beginning."

On February 9, 1883, the state conveyed to the plaintiff's grantors, Lapp and Hall, the following described tide lands, viz.:

"All of the tide lands lying in front of, and abutting on, lot 4 of sec. 26, Tp. 25 south, range 13 west, except that tract heretofore, on the 25th day of Nov. 1874, sold to Chas. E. Fox, and excepting that tract sold to G. Webster, April 10th, 1873."

Plaintiff claims that there is a tract of tide land about 82 feet wide lying between the Fox and the Webster tracts, and that defendant's buildings extend over upon said strip about 20 feet south of the south line of the Fox tract.

There was a judgment in favor of defendant, from which the plaintiff appeals.                                    REVERSED.

For appellant there was an oral argument by *Mr. John S. Coke,* with a brief over the name of *Coke & Seabrook,* to this effect.

I. The true boundary between the upland, which is the property of the Federal government, and the tide land, which belongs to the state, is the true or actual meander line of the stream or body of water, viz.: high-water mark: *Minto* v. *Delaney,* 7 Or. 337; *Moore* v. *Willamette Transp. & L. Co.* 7 Or. 355; *Andrus* v. *Knott,* 12 Or. 501 (8 Pac. 763); *Johnson* v. *Knott,* 13 Or. 308 (10 Pac. 418); *Weiss* v. *Oregon Iron & S. Co.* 13 Or. 496 (11 Pac. 255); *Turner* v. *Parker,* 14 Or. 340 (12 Pac. 495); *Shively* v. *Bowlby,* 152 U. S. 1 (14 Sup. Ct. 548: 38 L. Ed. 331); *Northern Pine Land Co.* v. *Bigelow,* 84 Wis. 157 (21 L. R. A. 776); 5 Cyc. 893, note 99.

II. The meander lines in surveys by the general government are not run as boundaries, but to ascertain the sinuosities of the shore, so that the stream, and not the meander line as actually run, is the true boundary: 5 Cyc. 899, note 18; 4 Am. & Eng. Enc. Law (2 ed.), 776; *Railroad Co.* v. *Schurmeier,* 74 U. S. (7 Wall.) 272; *Hardin* v. *Jordan,* 140 U. S. 371 (11 Sup. Ct. 838); *Whitehurst* v. *McDonald,* 3 C. C. A. 215; *Everson* v. *Waseca,* 44 Minn. 247 (46 N. W. 405); *Brown Oil*

*Co.* v. *Caldwell,* 35 W. Va. 95 (13 S. E. 42: 29 Am. St. Rep. 793) ; *Sizor* v. *Logansport,* 151 Ind. 626 (50 N. E. 377: 44 L. R. A. 814) ; *Provins* v. *Lovi,* 6 Okl. 94 (50 Pac. 82).

III. The question as to the location of a boundary being one of fact, a surveyor cannot give his opinion as to where it is, his duty is to confine himself to a statement of what he did: 5 Cyc. 967, 968; *Kelso* v. *Stigar,* 75 Md. 376 (24 Atl. 18) ; *O'Brien* v. *Cavanaugh,* 61 Mich. 368 (28 N. W. 127) ; *Radford* v. *Johnson,* 8 N. D. 182 (77 N. W. 601) ; *Case* v. *Trapp,* 49 Mich. 59 (12 N. W. 908) ; *Burt* v. *Busch,* 82 Mich. 506 (46 N. W. 790).

IV. A surveyor who has surveyed the premises may state what he found and explain his statements by a map (*Rowland* v. *McCown,* 20 Or. 538: 26 Pac. 853), and a map may be received in evidence when accompanied with testimony that it correctly shows the true location of the objects marked thereon: *Scanlan* v. *San Francisco & S. J. V. Ry. Co.* 128 Cal. 586 (61 Pac. 271) ; *Burwell* v. *Sneed,* 104 N. C. 118 (10 S. E. 152) ; *Hoge* v. *Ohio Ry. Co.* 32 W. Va. 562 (14 S. E. 152: 25 Am. St. Rep. 836).

But a map made by one person from notes of a survey made by another is incompetent, where there is no evidence of the correctness of the notes (*Hays* v. *Ison* (Ky.), 72 S. W. 733; *Donohue* v. *Whitney,* 133 N. Y. 178: 30 N. E. 848), nor is a map admissible upon the testimony of one who claims to be familiar with the premises, but did not survey the ground: *Smith* v. *Bunch,* 31 Tex. Civ. App. 541 (73 S. W. 559).

V. To render maps admissible in evidence as independent proof of the location of a boundary they must be (1) official, or (2) have been recognized as correct by the former owner, or (3) be referred to in the deed or grant, or (4) must be authenticated ancient documents: 5 Cyc. 963, 964; *Jones* v. *Huggins,* 1 Dev. 223; *Ellison* v. *Branstrator,* 153 Ind. 146 (54 N. E. 433) ; *Scanlan* v. *San Francisco & S. J. V. Ry. Co.* 128 Cal. 586 (61 Pac. 271) ; *Burwell* v. *Sneed,* 104 N. C. 118 (10 S. E. 152) ; *Hoge* v. *Ohio Ry. Co.* 32 W. Va. 562 (25 Am. St. Rep. 836: 14 S. E. 152).

For respondent there were oral arguments by *Mr. Edward Louis Coburn Farrin* and *Mr. James Monroe Upton,* with a brief of this effect.

1. All surveys of tide lands shall conform to and connect with the adjoining surveys of the United States, so far as may be practicable, and the certificate of the county surveyor, describing the lands applied for by metes and bounds, and stating the quantity thereof, shall be necessary to complete the purchase: Laws 1872, p. 132, § 7.

2. When the description specifies along the meanderings of the stream, and then gives the courses and distances, the meander line must be followed: *Turner* v. *Parker,* 14 Or. 340 (12 Pac. 495).

Opinion by MR. JUSTICE EAKIN.

The most important issues in the case are (1) is there a strip of tide land between the Fox and the Webster tracts; and, if so (2) is the south line of the Fox tract south of defendant's buildings? And both depend upon the proper and accurate tracing upon the ground of the boundaries of the tracts as given in the deeds.

Defendant claims that plaintiff has no standing in this court, because he has not established the existence of any tide lands between the Fox and the Webster tracts. The location of the Webster tract is not traced by the witness Whereat from the beginning point named in the deed. The survey of this tract, as set out in the deed, is tied to an angle in the government meander line; the call being: "Beginning 2.21 chains northward from a post at angle in meander line of Coos Bay." It is conceded in the evidence and disclosed by the plaintiff's Exhibit 10, that there is an angle in the government meander line 63.9 feet northerly from the point adopted by Whereat as the tie corner, which last point is not an angle in the meander line, and Whereat evidently justifies himself in ignoring this angle by reason of the further description in the deed of that angle post as "being 7.50 chains north 17° east from the northeast corner

49 OR.—— 16

of lot 2 in section 26"; but the northeast corner of lot 2 is not a corner in the United States survey, and it can only be ascertained by a subdivision of section 26 in the manner provided by the United States Land Department. It may be conceded as to all government surveys that there will be some discrepancies both as to measurements and courses between the field-notes and the measurements on the ground, and the surplus or shortage must be apportioned in subdividing the section, which in this case is liable to make lot 2 more or less than 20 chains wide, and thus vary its point of intersection with the meander line; that is, quarter·quarter corners must be established at points midway between section and quarter section corners: Gen. Land Office Circular, Restoration of Lost Corners and Subdivision of Sections, dated March 14, 1901, p. 15. And in a fractional quarter section each of such subdivisions will constitute a lot; and as neither the west nor the south lines of the northwest quarter of section 26 is full, that fractional quarter should constitute lot 4, and the reference in the deed treats it as one lot.

1. Both the witness Whereat and the deed refer to the northeast corner of lot 2 as an established corner; but it is not a corner of the public survey, and must be ascertained by the established method. The surveyor, in testifying in relation thereto, must state more than the result; he must detail his survey in locating such corner, and it will then be a legal question whether his method is correct and a question of fact whether the result is correct: 5 Cyc. 967; *Radford* v. *Johnson,* 8 N. D. 182 (77 N. W. 601) ; *O'Brien* v. *Cavanaugh,* 61 Mich. 368 (28 N. W. 127).

2. Here Whereat's method was incorrect. He establishes the tie corner from the northeast corner of lot 2, without disclosing that such corner is correctly determined, but when determined, it does not control the tie corner. The Webster deed fixes the starting point at 2.21 chains northward from the post at angle in meander line. That angle post in the meander line of the public survey was adopted by the county surveyor as the basis

of his survey of the Webster tract, and his starting point is the point to be ascertained, and must control now; and if that angle exists, and is known, it is not necessary to look further. If lost or obliterated, it must be found or re-established from some known corner by the approved methods. The reference in the deed to the northeast corner of lot 2 is only as a witness corner to identify and aid in finding the angle mentioned, and not to control it; and Whereat's survey or tracing is erroneous in adopting as a tie corner the point 63.9 feet southward on the meander line from the angle mentioned. But this error in tracing the Webster tract does not necessarily determine that plaintiff had not a *prima facie* case, at least it is not here for decision by this court.

3. The case was tried in the lower court upon the theory that the calls in the deed to Fox for the west line of the tract should give way to the meander line of the public survey, which would locate the south line of the Fox tract about 60 feet south of its location by the calls of the deed. By Section 7 of the "act to provide for the sale of tide and overflowed lands of the seashore and coast" (Laws 1872, pp. 129, 132), under which the Webster and Fox deeds were issued, it is provided that the applicant to purchase such land shall, at his own expense, cause the same to be surveyed by the county surveyor, such survey to conform to and connect with the survey of the United States so far as may be practicable, describing the lands by metes and bounds, and this provision has been retained in all amendments and subsequent acts relating thereto. This survey is presumed to be the true meander line of the bay at that date, and such survey constitutes the basis upon which the state land board acts in making the deed, and, there being no ambiguity in the deed, its calls must control. It is settled in this state that where a stream, lake or bay is meandered by the public survey, the shore becomes the real boundary, and not the meander line as surveyed, if there is found to be a discrepancy between the two: *French Livestock Co. v. Springer*, 35 Or. 312 (58 Pac. 102) ; *Johnson v. Tomlinson*, 41 Or. 198 (68 Pac. 406). The county surveyor in this

case determined that there was a discrepancy between the meander line of the public survey and the shore line. His decision was accepted and acted upon by the state land board, and is final until an error is shown and the deed corrected in some manner authorized by law. If permanent and visible or ascertained boundaries or monuments are mentioned in the deed as the boundary or corners of the survey, such boundary and monuments should control (though this rule is not an inflexible one (*Hale* v. *Cottle,* 21 Or. 580 : 28 Pac. 901; *Baker County* v. *Benson,* 40 Or. 207, 218 : 66 Pac. 815) ; but in this deed, the only reference is "along the meander line," which can only mean the actual meander line of the bay, because the meander line of the public survey is not a permanent visible or ascertained boundary.

4. In *Railroad Co.* v. *Schurmeier,* 74 U. S. (7 Wall.) 272 (19 L. Ed. 74), it is held: "Meander lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream"; and this is the rule generally, both in the state and federal courts. Therefore the court erred in admitting evidence tending to establish the west boundary of the Fox tract upon the meander line of the public survey, and also erred in instructing the jury to the effect that they might ignore the calls in the deed.

5. As to the question of adverse possession by the defendant, the only proof is the testimony of Patrick Hennessey, superintendent of the Oregon Coal & Navigation Co., the defendant's grantor, and he says the company had possession of some tide land there.

"About all I did was to pay the taxes on it. There were no buildings on it, some piling. We received rent money for scows and a piledriver, tied up there two or three years ago. These houseboats were occupied as dwellings. I do not know where the piles were driven, as it has been a long time ago. It is more than 10 years since they were driven. The houseboats were not there continuously. Once in a while they were tied up there during this period. The piles were not connected with each other in any way."

This evidence does not tend to establish adverse possession: *Montgomery* v. *Shaver,* 40 Or. 251 (66 Pac. 923). Actual occupancy, *pedis possessio,* is necessary to constitute such possession as will ripen into title. Therefore, it was error for the court to submit the question of adverse possession to the jury.

6. It was also error to admit in evidence Exhibits K and L, defendant's testimony, for the reason that such exhibits are only competent as evidence, when identified, as disclosing relatively the situation upon the ground. Such a map is intended to demonstrate to the jury the actual condition upon the ground and the true relative positions of lines or objects mentioned, but when so identified by one competent witness, it may be admitted, and if its correctness is disputed, it is a question for the jury to determine the fact: *Hays* v. *Ison* (Ky.), 72 S. W. 733; *Donohue* v. *Whitney,* 133 N. Y. 178 (30 N. E. 848). The witness who drew this map says he made no measurements on the ground as to lines and angles or the relative positions of defendant's property or buildings, but used as his data the boundaries mentioned in the deeds, the city plats, and the field notes of the meander line of the public survey. From such data it is impossible for him to locate the exact relative positions of defendant's buildings and the south line of the Fox tract.

The judgment is reversed, and the cause remanded to the lower court for a new trial.                                    REVERSED.