Argued September 12, 1978, affirmed February 27, 1979

# ALLISON, *Respondent-Cross-Appellant,*
### *v.*
# SHEPHERD, *Appellant-Cross-Respondent.*
### (No. 75-1069, SC 25379)

591 P2d 735

[447]

Robert H. Anderson, of Murphy, Anderson & Cegavske, Roseburg, argued the cause and submitted briefs for appellant/cross-respondent.

Randolph Lee Garrison, Roseburg, argued the cause and filed a brief for respondent/cross-appellant.

Before Denecke, Chief Justice, and Holman, Howell and Lent, Justices.

HOWELL, J.

## HOWELL, J.

This action for trespass involves a dispute over ownership of land bordering the Umpqua River. The trial court held that plaintiff did not have title to the land under her deed, but submitted to the jury the question of whether plaintiff had obtained title by adverse possession. The jury returned a verdict for plaintiff, and defendant appeals.

The facts can best be illustrated by the accompanying diagram. Plaintiff is the record owner of land included in Lot 9 under a series of conveyances dating back to a 1910 deed from the State of Oregon to one C. H. Maupin. Defendant is the record owner of the land included in Lot 2 under a 1975 deed from Don L. and Irma Jean Mode. Neither the 1910 deed to Maupin nor the 1975 deed from the Modes contains a metes and bounds description of the property. Each merely refers to the parcels by lot numbers.

It is undisputed that the actual boundaries of the Umpqua River no longer correspond to the point at which they appear in the original government survey. In the diagram, the present course of the river is indicated by broken lines, and the platted course is indicated by the solid lines. As can be seen, the discrepancy has resulted in an area of unplatted land that did not appear on the original survey. This dispute is over title to a portion of that unplatted land.

Shortly after taking title to Lot 2 in January of 1975, defendant indicated to plaintiff that he desired to do some logging in the disputed area. Plaintiff told defendant that she considered the property hers and that she did not want her land logged. Defendant nevertheless began logging in the disputed area. When plaintiff objected, defendant replied that "the boundaries were too hard for us to understand" and that "he'd leave it up to his lawyer." Defendant also graded and removed some land near the bank of the river.

[449]

Plaintiff then brought this action against defendant for trespass. Plaintiff's complaint contained two counts, one for timber trespass under ORS 105.810, and one for simple trespass for the removal of the land near the bank of the river. Plaintiff claimed title to the disputed land in question by deed or, in the alternative, by adverse possession. The trial court held that plaintiff's deed gave her title to only the southern portion of the disputed area (on the diagram, the land

south of line MX), but the jury found that plaintiff had established title in the remaining portion by adverse possession. The jury further found that defendant had intentionally trespassed on the disputed land, both by logging the timber and by moving the land on the bank of the river, but the jury found that plaintiff had not been damaged by the simple trespass. The trial court denied plaintiff's request for a nominal damage instruction. Judgment was entered for plaintiff for $8,535.60 on the timber trespass count.

Defendant appeals, assigning as error the trial court's failure to direct a verdict in his favor on plaintiff's adverse possession claim.[1] Plaintiff cross appeals, assigning as error the trial court's construction of plaintiff's deed and the court's refusal to give a nominal damage instruction.

Because we conclude that there was sufficient evidence to support the jury's finding on plaintiff's adverse possession claim, we need not determine whether plaintiff also took title to the land under her deed. For a discussion of the problem of apportioning unplatted riparian property, *see* Manual of Instructions for the Survey of Public Lands of the United States 178-79 (1973); III American Law of Property 436-38 (Casner ed 1974). *See also Producers Oil Co. v. Hanzen,* 238 US 325 (1915); *United States v. 295.90 Acres of Land,* 368 F Supp 1301 (MD Fla 1974), *aff'd* 510 F2d 1406 (5th Cir 1975); *Blatchford v. Voss,* 197 Wis 461, 222 NW 804 (1922).

In order to establish title to the land by adverse possession, plaintiff was required to prove that she occupied the disputed land openly, notoriously, continuously, and exclusively under a claim of right for the statutory period. ORS 12.050; *Nedry v. Morgan,* 284 Or 65, 69, 584 P2d 1381 (1978); *Grimstad v. Dordan,* 256 Or 135, 471 P2d 778 (1970). It is not necessary, however, that plaintiff show she actually

---

[1] We have considered defendant's other assignment of error, which relates to plaintiff's pleadings, and find it without merit. *See* note 3, *infra.*

occupied the land continuously unless that is the kind of use that would be expected of such land. An adverse possessor need only establish an occupation or use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited. *Lee v. Hansen,* 282 Or 371, 376, 578 P2d 784 (1978); *Almond v. Anderegg,* 276 Or 1041, 1047, 557 P2d 220 (1976).

3.   Defendant argues that plaintiff's adverse possession claim must fail because plaintiff lacked "color of title." Assuming without deciding that "color of title" is necessary for plaintiff to establish her adverse possession in this case, we do not agree with defendant that plaintiff's deed was insufficient to provide that element.[2]

Plaintiff's deed purported to convey land fitting the following description:

> "Beginning at a point 17 rods West of the Southeast corner of the Southwest quarter of Section 22, Township 23 South, Range 7 West, Willamette Meridian; thence North 32 degrees West 171.58 rods *to South bank of Umpqua River; thence following meander line of said river in a Northwesterly direction to the Northwest corner of Government Lot No. 9 of said Section 22; thence South on the West line of said Section 22* to the Northeast corner of the Southeast quarter of the Southeast quarter of Section 21, said Township and said Range; thence South 45 degrees East to the Southeast corner of the Southwest quarter of the Southwest quarter of said Section 22; thence East along South line of said Section 22 to point of beginning." (Emphasis added.)

Defendant contends that the call "to South bank of Umpqua River; thence following meander line of said river" merely describes the property south of the

---

[2] It should be noted that whether or not plaintiff had color of title under her deed is a matter separate and distinct from whether she actually took title under her deed. Whether plaintiff took title under her deed depends upon the interests of her predecessors, not merely upon the language in her deed, and is an issue on which we express no opinion.

government established meander line. On the accompanying diagram, defendant would describe plaintiff's east and north boundaries as line ABM.

■ We think defendant's position is untenable. This court has long recognized that the meander line of a stream appearing on a public survey is normally not intended to serve as the boundary of upland lots. *Oregon v. Portland Gen. Elec. Co.,* 52 Or 502, 95 P 722, 98 P 160 (1908); *Weiss v. Oregon Iron etc. Co.,* 13 Or 496, 11 P 255 (1886); *Minto v. Delaney,* 7 Or 337 (1879). The meander lines are run in government surveys in order to determine the amount of land disposed of in government sales so that a price may be fixed; they are not intended to serve as actual boundary lines. *Hardin v. Jordan,* 140 US 371, 381 (1891). Accordingly, a lot that is bounded by a body of water on a government plat has as its true boundary the actual body of water, even if there in fact exists an unplatted strip of land between the meander line and the actual shore. *Minto v. Delaney,* supra.

We attach no particular significance to the fact that the deed includes the call "thence following meander line." We considered a similar call in *Seabrook v. Coos Bay Ice Co.,* 49 Or 237, 89 P 417 (1907), and held:

"* * * in this deed, the only reference is 'along the meander line,' which can only mean the actual meander line of the bay, because the meander line of the public survey is not a permanent visible or ascertained boundary." 49 Or at 244.

We hold that the description in plaintiff's deed includes the land between the government established meander line and the actual bank of the river, and that the north boundary of the property described in the deed is the bank of the river running to the line dividing sections 21 and 22 (line CD on the diagram).[3]

---

[3] Since the language in plaintiff's deed sufficiently described the disputed area, plaintiff's pleading, which relied on the description contained in the deed, also sufficiently described the disputed area. Defendant's first assignment of error, which is directed to the sufficiency of plaintiff's pleading, is therefore without merit.

It follows that plaintiff's deed was sufficient to give her color of title to the disputed area.[4]

■ The remainder of defendant's argument on appeal is devoted to a discussion of the evidence and why defendant believes the evidence was insufficient to prove the elements of adverse possession. Defendant cites *State ex rel Highway Division v. Rosanbalm,* 31 Or App 717, 723, 571 P2d 537 (1977), *rev. denied* 281 Or 431 (1978), for the proposition that each element of adverse possession must be shown by "clear and positive proof" and compares the facts of this case to those of other cases in which this court held the evidence insufficient to show adverse possession.

■ Nearly all the cases defendant relies upon in his brief are suits in equity where this court reviewed the evidence de novo. The present case is not an equitable proceeding, but an action at law tried to a jury. In such cases, this court is precluded from overturning a verdict on grounds of insufficient evidence unless we can affirmatively say there is no evidence to support the verdict. Or Const., Amended Art VII, § 3.

From our review of the record, we cannot say there is no evidence to support the jury verdict. As noted above, plaintiff was not required to show that she and her husband actually occupied the disputed land for the statutory period, but only that they made such use of the land as would be made by an owner of the same type of land, taking into account the uses for which the land is suited. The evidence was that the disputed land is primarily a steep hillside dominated by trees down to the water's edge and that the terrain is thick with brush. From this, it appears that a normal use of the land would simply be maintenance of the boundaries and logging.

---

[4] Defendant's own expert witness testified that if the term "meander line" were read to mean the ordinary high water mark, plaintiff's deed would encompass the disputed property.

[454]

There was testimony that for over 20 years plaintiff's husband maintained a gate at the entrance to the disputed area that was kept locked with a chain and a padlock, and that a "no trespassing" sign was placed on the gate. There was also evidence that plaintiff's husband sold timber or logs from the area and gave permission to another to construct a road. The land had been listed on the tax charts as belonging to plaintiff and had been taxed to plaintiff since 1949. Finally, there was evidence that neighboring landowners, including defendant's immediate predecessor in title, considered plaintiff and her husband to be the owners of the disputed area. This evidence was sufficient to present a jury question as to whether plaintiff acquired title to the disputed property by adverse possession. The trial court properly denied defendant's motion for a directed verdict.

■ Plaintiff argues in her cross-appeal that the trial court erred in refusing to give a nominal damage instruction on her count of simple trespass. As was the case in *Kulm v. Coast-to-Coast Stores,* 248 Or 436, 443, 432 P2d 1006 (1967), "We are unable to see how any good purpose would be served by the allowance of nominal damages in the present case."

In *Kulm* we endorsed the view expressed by McCormick that the forward-looking trend is against the classical view that wherever a "right" is violated the person aggrieved is entitled to at least nominal damages. *Id.* at 443, n. 6, *quoting* McCormick on Damages 96 (1935). We therefore decline plaintiff's invitation that this court "assess nominal damages to plaintiff." We also doubt that plaintiff would have any enthusiasm about this court reversing her judgment and remanding the cause for a new trial so that the jury could be instructed on nominal damages.

Affirmed.