Argued and submitted July 19, 1985, affirmed February 26, reconsideration denied April 11, petition for review denied May 20, 1986 (301 Or 165)

# MORSE BROS., INC.,
*Appellant,*

*v.*

# WALLACE et al,
*Respondents.*

(80-0399; CA A33705)

714 P2d 1095

Dean M. Quick, Albany, argued the cause for appellant. With him on the brief was Weatherford, Thompson, Brickey & Powers, P.C., Albany.

Melvin T. Rollema, Albany, argued the cause and filed the brief for respondents.

Before Gillette, Presiding Judge Pro Tempore, and Joseph, Chief Judge, and Young, Judge.

YOUNG, J.

**YOUNG, J.**

In this ejectment action, plaintiff appeals a judgment for defendants.[1] The issue is whether plaintiff acquired the disputed land by virtue of a deed from Linn County or whether it was added to defendants' land by accretion. We determine that the evidence supports the trial court's conclusion that defendants' land is riparian and that the disputed land accreted to their land. We therefore affirm.

■  The disputed land is located on the South Santiam River east of Lebanon. In late 1852 or early 1853 surveyors under contract to the General Land Office conducted a survey to establish section lines and meander the river.[2] Later in 1853 a different surveyor surveyed the Ridgeway Donation Land Claim, locating it generally south and east of the river in an area where the river flows north and then bends to the east. Defendants trace their title to the Ridgeways, the original patentees. The Ridgeway and other donation land claims took most of the land in the area, but across the river to the north of the Ridgeway claim was about 20 acres of unclaimed land known as Government Lot 1. It later passed into private

---

[1] Defendants counterclaimed to quiet title to the disputed land by adverse possession. Because the trial court found in their favor on plaintiff's ejectment claim, which is a legal proceeding, ORS 105.005, it did not decide the equitable counterclaim. We therefore review the judgment as an action at law.

[2] A surveyor meanders a body of water by establishing lines which approximate its boundaries. The purpose of meander lines on a public survey is to reflect the curvature of the stream and to aid in calculating acreages; they are not intended to state absolute boundaries. A government grant of land with reference to meander lines is a grant to the edge of a navigable stream or to the thread of a non-navigable stream. Such a line is riparian and the actual amount owned will vary as the stream moves by the gradual processes of accretion, erosion and reliction. *Allison v. Shepherd,* 285 Or 447, 453, 591 P2d 735 (1979); *State v. Imlah,* 135 Or 66, 73, 294 P 1046 (1931); *Johnson v. Tomlinson,* 41 Or 198, 200, 68 P 406 (1902); *see also Belmont v. Umpqua Sand & Gravel,* 273 Or 581, 542 P2d 884 (1975). *Luscher v. Reynolds,* 153 Or 625, 630, 56 P2d 1158 (1936), quoting from *Hardin v. Jordan,* 140 US 371, 380, 11 S Ct 808, 35 L Ed 428 (1891) states:

"It has been the practice of the government from its origin, in disposing of the public lands, to measure the price to be paid for them by the quantity of upland granted, no charge being made for the lands under the bed of the stream, or other body of water. The meander lines run along or near the margin of such waters are run for the purpose of ascertaining the exact quantity of the upland to be charged for, and not for the purpose of limiting the title of the grantee to such meander lines. It has frequently been held, both by the Federal and state courts, that such meander lines are intended for the purpose of bounding and abutting the lands granted upon the waters whose margins are thus meandered; and that the waters themselves constitute the real boundary."

hands. Plaintiff is its present owner, having acquired it from Linn County, which bought it for unpaid taxes at a sheriff's sale in 1939. In 1853, Government Lot 1 and the Ridgeway claim were separated by the river. The southern edge of Government Lot 1 bordered the river; whether the northern edge of the Ridgeway claim also did is the decisive issue in this case.

In the years from 1853 to 1964 the river gradually moved northward, eating away Government Lot 1 and adding land on the river's south side.[3] The result was that the remaining portion of Government Lot 1 north of the river is less than half the original lot and that a large amount of land has been created directly north of and contiguous to the Ridgeway claim. Plaintiff claims the land between the north line of the Ridgeway claim and the 1964 river line by virtue of the county's conveyance to it of Government Lot 1 and of a separate parcel, described by metes and bounds, which corresponds to the 1853 bed of the river.[4] Defendants claim the land as an accretion to the Ridgeway claim.[5]

The Ridgeway claim is described in the patent solely by metes and bounds. The description does not include a call to the river or to its banks, nor does it mention meander lines. However, there is evidence to support the conclusion that the line in question is close to the General Land Office meander lines or is between them and the 1853 location of the river. The notes of the surveyor who surveyed the Ridgeway claim state that, at the points in issue, the line runs from meander station to meander station. At least some of those meander stations are different from those used in the Government

---

[3] Heavy flooding in 1964 caused an avulsive change. *See Purvine v. Hathaway*, 238 Or 60, 63, 393 P2d 181 (1964). Neither party asserts that river movements thereafter affected title to the land in dispute.

[4] Plaintiff does not show that its grantor, Linn County, ever acquired title to the second parcel. Plaintiff also does not explain how it acquired title to that portion of original Government Lot 1 through which the river has passed. It presumably would assert either that the land accreted to the second parcel or that Government Lot 1 was not riparian and that the movement of the river did not affect its boundaries. Because of our resolution of the case we need not decide whether the county's deed to the second parcel passed anything or what riparian rights the second parcel might have.

[5] Defendants transferred portions of the accreted land among themselves by several deeds in the early 1970's. What interest each defendant presently has in the land is irrelevant to this case, because the defendants together have the complete ownership.

Land Office survey. A surveyor testified that it was not unusual to find that one surveyor would meander a river in one place and another surveyor later would also survey along the meander lines, but would pick different stations. Neither surveyor needed to be particularly concerned, because the actual boundary would be the river, not the meander lines. There is substantial evidence to support the trial court's finding that the northern boundary of the patented Ridgeway claim was the river.

■ ■　The facts that the description in the patent to the Ridgeways does not refer to the river and that it is necessary to examine the surveyor's field notes to determine that the boundary was intended as a meander line are irrelevant. When land is granted according to an official survey, the notes, lines, descriptions and landmarks are as much a part of the grant as if they were stated in the deed. *Cragin v. Powell,* 128 US 691, 696, 32 L Ed 566 (1888). To hold otherwise would leave ungranted riparian land between the Ridgeway grant and the river; we strive to construe grants and deeds to avoid such ungranted strips. Because the grant to the Ridgeways was made with reference to meander lines at the crucial location, the grant included the right to accretions.[6] *State v. Imlah, supra* n 2, 135 Or at 73. The trial court's findings that the disputed land is an accretion to the Ridgeway claim and that the accreted land belongs to defendants are amply supported by the evidence.[7]

Affirmed.

---

[6] Later deeds in defendants' chain of title refer to the land by its original description without reference to accretions. Because the land was originally riparian, that description included accretions in the absence of a clear intent otherwise. *See Kingsley v. Jacobs,* 174 Or 514, 523, 149 P2d 950 (1944).

[7] Plaintiff emphasizes that there was an ungranted island in the middle of the river in 1853. That fact, if correct, is irrelevant. The river moved far away from its original bed, and in the process any island was joined to the mainland by accretion.